

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-22-2007

# Santana-Gonzalez v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2965

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Santana-Gonzalez v. Atty Gen USA" (2007). *2007 Decisions.* Paper 305.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/305

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-2965

_____

HAIDEE DE REGLA SANTANA GONZALEZ,
                                        Petitioner

vs.

ATTORNEY GENERAL OF
THE UNTIED STATES,

                                        Respondent

_____

On Petition for Review of an Order of
the Board of Immigration Appeals
U.S. Department of Justice
(BIA No. A97-437-427)
Immigration Judge: Daniel Meisner

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 20, 2007

Before: SLOVITER, SMITH, and GARTH, Circuit Judges.

(Opinion Filed:  October 22, 2007)

_____

OPINION

_____

Garth, Circuit Judge

In 1997, Congress amended the Immigration and Nationality Act ("INA") to allow a notice of removal hearing to be served on an alien by regular mail, as opposed to certified mail, return receipt requested. In this case, an Immigration Court sent Petitioner Haidee de Regla Santana Gonzalez ("Petitioner") a notice of hearing by regular mail, which Petitioner claims she never received. The questions presented in her Petition are essentially twofold: (1) what presumption of receipt attaches to a notice of hearing sent by regular mail; and (2) how an alien claiming non-receipt of a notice sent by regular mail can rebut that presumption, thereby entitling her to an evidentiary hearing on that claim. We will grant her Petition.

**I.**

Petitioner is a 35 year old native and citizen of Cuba. She arrived at Newark International Airport on November 5, 2003, without a valid visa or valid entry document. Upon arrival, a Department of Homeland Security ("DHS") officer apprehended her. Petitioner then informed the officer that she feared returning to Cuba. As a result, the DHS paroled her into the United States.

The DHS immediately served Petitioner with a Notice to Appear. The Notice to Appear charged her as removable under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I).[1] Additionally, the Notice to Appear listed Petitioner's address as "721 25th Street, Union City, New Jersey 07087," which was the address she gave the DHS upon arrival and the residence where her uncle, his wife, and their son lived.

---

[1]This statute renders inadmissible any alien who, at the time of application for admission, was not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document, and a valid unexpired passport, or other suitable travel document. 8 U.S.C. § 1182(a)(7)(A)(i)(I)

The Notice to Appear did not provide a date for the Petitioner to appear before an Immigration Judge ("IJ"). Instead, it only ordered Petitioner to appear before an IJ in Newark, New Jersey, on a date "to be set" at a time "to be set." The Notice to Appear also stated that Petitioner should immediately notify the Immigration Court "in writing" on "Form EOIR-33" of any address change.

On January 7, 2004, the Immigration Court in Newark, New Jersey sent a Notice of Hearing to Petitioner's Union City address. The Notice of Hearing stated that the Immigration Court had scheduled her case for a hearing on January 15, 2004. This notice was sent via ordinary first-class mail.

Petitioner resided at the Union City address from her arrival in November 2003 until the beginning of January 2004. She then moved to Homestead, Florida. During her stay in Union City, Petitioner claims she never received the Notice of Hearing. Petitioner further claims that, before moving to Homestead, her uncle's wife called the DHS to advise it of the Petitioner's impending move.

After moving to Homestead, Petitioner asked the Florida Department of Children & Families Services for assistance with her immigration case. According to Petitioner, a person affiliated with the organization called the DHS's Newark office to advise it that Petitioner had moved to Homestead, Florida. Petitioner claims that, during her stay in Homestead, her uncle had been asked by Petitioner to forward any mail addressed to her in Union City to her new address in Homestead. According to Petitioner, she never received any Notice of Hearing from her uncle while in Homestead.

On January 15, 2004, the Immigration Court held Petitioner's removal hearing. Petitioner did not appear. Accordingly, the IJ issued an *in absentia* order removing Petitioner to Cuba.

In February 2004, Petitioner moved to Las Vegas, Nevada. Upon arriving in Las Vegas, Petitioner communicated with the Catholic Charities of Southern Nevada, as well as her present counsel, for assistance with her immigration case. In September

2004, Petitioner's counsel discovered the *in absentia* removal order after calling the Executive Office of Immigration Review. Petitioner then filed a motion to rescind the removal order and to reopen her immigration case. In her motion to reopen, Petitioner submitted an affidavit stating that she had not received the Notice of Hearing while living in Union City. The affidavit also stated that her uncle did not send her any Notice of Hearing after she moved to Florida, nor did he advise her of any notice sent to Petitioner at his Union City address. The IJ denied her motion without a hearing. The IJ found that Petitioner failed to provide sufficient evidence tending to establish non-receipt of the Notice of Hearing. Specifically, the IJ noted that the Notice of Hearing "was not returned as undeliverable" and that Petitioner failed "to provide probative evidence that tends to plausibly explain or confirm the claim of nondelivery."

Petitioner then appealed to the Bureau of Immigration Appeals ("BIA"). In her submission to the BIA, Petitioner argued that the IJ erred in holding that she failed to rebut the presumption of receipt of the Notice of Hearing. Petitioner also argued that, under *Salta v. INS*, 314 F.3d 1076 (9th Cir. 2002), she was entitled to an evidentiary hearing regarding her claim of non-receipt. The BIA disagreed. In a written decision, the BIA affirmed the IJ's holding that Petitioner failed to rebut the presumption of effective delivery. Specifically, the BIA relied on *Matter of Grijalva*, 21 I&N Dec. 27 (BIA 1995), and held that the Notice of Hearing was entitled to a "presumption of effective delivery." The BIA also rejected Petitioner's claim that she was entitled to an evidentiary hearing regarding non-receipt of the notice. On this point, the BIA stated:

> Finally, while [Petitioner] asserts that her relatives forwarded all her mail to her in Florida, but did not forward the Notice of Hearing, she has failed to provide an affidavit from them so stating.

This Petition for Review timely followed. The Petition, among other things, sought a reversal of the BIA's order, an order rescinding and reopening removal proceedings, and an order remanding those proceedings to the BIA with instructions

4

to remand to the IJ.

## II.

We exercise jurisdiction to review the BIA's final order of removal under Section 242(a) of the INA, 8 U.S.C. § 1252(a). Because the BIA adopted the findings of the IJ and also commented on the sufficiency of the IJ's determinations, this Court reviews the decisions of both the BIA and the IJ. *See Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir. 2004). We review these decisions under the highly deferential "abuse of discretion" standard. *INS v. Abudu*, 485 U.S. 94, 105 (1988); *Guo v. Ashcroft*, 386 F.3d 556, 562 (2004). As such, these determinations "'will not be disturbed unless they are found to be arbitrary, irrational, or contrary to the law.'" *Guo*, 386 F.3d at 562 (quoting *Tipu v. INS*, 20 F.3d 580, 582 (3d Cir. 1994)).

## III.

The INA allows an IJ to hold removal proceedings *in absentia* if the alien was provided proper written notice of the proceeding. 8 U.S.C. § 1229a(b)(5)(A). Under the INA, written notice must be "given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any)." 8 U.S.C. § 1229(a)(1). An *in absentia* removal order may be rescinded, though, if the alien demonstrates that (1) she was in Federal or State custody and her failure to appear was through no fault of her own, (2) she "did not receive notice" of the hearing, or (3) her failure to appear was because of exceptional circumstances. 8 U.S.C. § 1229a(b)(5)(C). Our focus here is on the second means of rescinding an *in absentia* removal order: non-receipt of notice. As the word "receive" indicates, the key question in reopening a removal proceeding for lack of notice is not whether the Immigration Court properly mailed the notice to the alien, but whether the alien actually *received* the notice. *Lopes v. Gonzales*, 468 F.3d 81, 83 (2d Cir. 2006) (citing *Joshi v. Ashcroft*, 389 F.3d 732, 736 (7th Cir. 2004)).

We turn first to the appropriate standard to be employed in determining the receipt of a notice of hearing sent by regular ordinary mail.

## A.

The IJ found Petitioner's affidavit insufficient grounds for reopening her case, stating that Petitioner failed to "provide probative evidence that tends to plausibly explain or confirm the claim of nondelivery." The BIA similarly found Petitioner's affidavit insufficient, holding that she had "not overcome the presumption of effective delivery," citing to its own precedent in *Matter of Grijalva*, 21 I&N Dec. 27 (BIA 1995).

The presumption derived from *Matter of Grijalva* involved service of a notice of hearing by *certified* mail. Prior to 1997, a notice of removal hearing could only be served by *certified* mail, return receipt requested. 8 U.S.C. § 1252b(a)(2)(A) ("In deportation proceedings under section 1252 of this title, written notice ... shall be given in person to the alien (or, if personal service is not practicable, such notice shall be given by certified mail to the alien or to the alien's counsel of record, if any).") (repealed, effective 1997); 8 U.S.C. § 1252b(f)(1) ("The term 'certified mail' means certified mail, return receipt requested.") (repealed, effective 1997).[2] In

---

[2]

 This change was apparently aimed at making *in absentia* orders easier to obtain and easier to enforce in the face of motions to reopen. For instance, in remarks documenting the change, which were contained in Section 304 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, the House Judiciary Committee commented:

> [T]here are often protracted disputes concerning whether an alien has been provided proper notice of a proceeding. This impairs the ability of the government to secure in absentia deportation orders in cases where aliens fail to appear for their hearings; in many such cases, aliens will petition to reopen their hearings on the grounds that they never received proper notice.
>
> Section 304 addresses these problems with a

6

*Grijalva*, the BIA held:

> [I]n cases where service of a notice of a deportation proceeding is sent by *certified mail* through the United States Postal Service and there is proof of attempted delivery and notification of certified mail, a strong presumption of effective service arises. There is a presumption that public officers, including Postal Service employees, properly discharge their duties. A bald and unsupported denial of receipt of certified mail notices is not sufficient to support a motion to reopen to rescind an *in absentia* order.... (emphasis added)

This presumption of effective service may be overcome by the affirmative defense of nondelivery or improper delivery by the Postal Service. However, in order to support this affirmative defense, the respondent must present substantial and probative evidence such as documentary evidence from the Postal Service, third party affidavits, or other similar evidence demonstrating that

---

> number of new requirements. First, it requires the INS to establish a central address file to accurately record address information, including changes provided by aliens. Second, it provides that service by mail of the required notice of hearing is sufficient if there is proof of delivery to the most recent address provided by the alien. Third, it authorizes the immigration judge to enter an in absentia order if the alien fails to appear provided that there is proof of attempted delivery at this address. Fourth, it allows an alien to rescind an in absentia order only in the case of specified exceptional circumstances or if the alien demonstrates that notice was not received notwithstanding the alien's compliance with the notice of address requirements.

H.R. Rep. No. 104-469, at 159 (1996).

there was improper delivery.

> *Matter of Grijalva*, 21 I&N Dec. at 37 (internal citation omitted). Accordingly, *Grijalva* stands for the proposition that a "strong presumption" of effective service of a notice of hearing arises when the notice is sent by certified mail, and this presumption may only be overcome by presenting "substantial and probative evidence."

Since 1997, however, a notice of hearing may be served by regular mail. 8 U.S.C. § 1229(a)(1). In other contexts, we have long recognized a presumption that ordinary regular mail properly sent is presumed to be received. *See, e.g., Welch & Forbes Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.)*, 311 F.3d 298, 304 (3d Cir. 2002) ("The common law has long recognized a presumption that an item properly mailed was received by the addressee.") (citations omitted). Such a presumption in the case of ordinary regular mail is to be contrasted with the "strong presumption" required in *Grijalva* in the case of certified mail, particularly since certified mail carries with it extra assurances of effective delivery that are absent when letters are sent via ordinary means. The difference in the strength of presumption, and in its effect when applied, is a difference which we recognize and approve, as have other courts of our sister circuits. *Lopes v. Gonzales*, 468 F.3d 81, 85 (2d Cir. 2006); *Nibagwire v. Gonzales*, 450 F.3d 153, 156-57 (4th Cir. 2006); *Joshi v. Ashcroft*, 389 F.3d 732, 736-37 (7th Cir. 2004); *Ghounem v. Ashcroft*, 378 F.3d 740, 744-45 (8th Cir. 2004); *Salta v. INS*, 314 F.3d 1076, 1079 (9th Cir. 2002).

The Ninth Circuit in *Sembiring v. Gonzales*, --- F.3d ---, No. 04-74076, 2007 U.S. App. LEXIS 20211 (9th Cir. Aug. 24, 2007), relied upon its holding in *Salta* that "a weaker presumption" of effective service applies to service by regular mail. The court stated as follows:

> Under *Salta*, less evidence was required to overcome the presumption of effective service than under *Grijalva*. This lower evidentiary standard makes good sense. If a letter is sent by certified mail, there is a paper trail in Postal Service records showing both mailing and receipt

(or non-receipt). By contrast, there is no Postal Service paper trail for regular mail. There is seldom any administrative paper trail either, other than a copy of the notice in question and, sometimes, a copy of the envelope in which the notice was sent.

As we previously held in *Salta*, "some of the *Grijalva-Arrieta* proof requirements (e.g., documentary evidence from the Postal Service, third party affidavits indicating improper delivery, etc.) ... clearly have no application under a regular mail regime." [*Salta*,] 314 F.3d at 1080. If the evidence described in *Grijalva* "were the standard under the current statute, we would leave respondents virtually without recourse to rebut the presumption of effective delivery." *Ghounem*, 387 F.3d at 744. Such a result would defeat the purpose of Congress's express authorization for rescission of in absentia removal orders when the alien "did not receive notice." 8 U.S.C. 1229a(b)(5)(C)(ii).

*Sembiring*, *supra* at \*17-18. We now hold, as do those courts, that *Grijalva*'s strict evidentiary standard – a strong presumption – applies only when a notice from an Immigration Court or the INS (or Department of Homeland Security) is sent by *certified* mail, and that a weaker presumption of receipt applies when such a notice is sent by *regular* mail.

## B.

The second issue before us is what an alien, such as Petitioner, must do to demonstrate that she did not receive a notice of hearing.[3] In her motion to reopen, Petitioner essentially

---

[3] In denying Petitioner's motion to reopen, the IJ stated, "Even ordinary mail delivery entails a presumption of receipt provided the letter is properly addressed." *In the Matter of Haidee de Regla Santana-Gonzalez*, File No. A 97 437 427 (EOIR June 9, 2005)

9

submitted three items to the IJ: (1) a brief, which included a statement of facts and legal argument; (2) an affidavit from herself; and (3) an affidavit from her counsel, which attached her entire immigration file obtained from the DHS. Petitioner's affidavit was the only piece of evidence directly supporting her claim of non-receipt. It stated:

> 10. During the two months I resided in Union City, New Jersey, I did not receive a Notice of Hearing advising me of the date to appear before the Immigration Court in Newark, New Jersey.[4]
>
> 12. In January of 2004, I moved to 15023 SW 302, Homestead, FL 33033. But, my uncle continued to reside at 721 25th Street, Union City, NJ 07087 with his wife and son.

---

(Meisner, I.J.) (citing *Rosenthal v. Walker*, 111 U.S. 185 (1894)). Thereafter, as we recite in the text above, the BIA affirmed the IJ citing *Matter of Grijalva*, 21 I&N Dec. 27 (BIA 1995). As we have recognized, the presumption in *Grijalva* is a far stronger presumption of effective delivery than the presumption of effective delivery by ordinary regular mail. The BIA having applied the stronger [certified mail] presumption rather than the weaker [regular mail] presumption, understandably leaves us uncertain as to the quality and sufficiency of evidence now required to rebut the presumption of effective delivery of a hearing notice when the addressee claims non-receipt. The application of two different standards by the IJ and the BIA clouds the principle of which presumption applies to Petitioner's evidence. This is so particularly since the 1894 Supreme Court precedent cited by the IJ could not and did not take into account the more recent statutes which we have discussed dealing with certified and regular mail delivery. To the extent that the BIA applied an incorrect presumption under *Grijalva*, the BIA did not properly exercise its discretion. *See Tipu v. INS*, 20 F.3d 580, 582 (3d Cir. 1994) ("Discretionary decisions of the BIA irrational, or contrary to law.'").

[4]The Petitioner misnumbered the paragraphs in her affidavit, omitting the number eleven.

13. My uncle, his wife and son regularly sent me mail that was addressed to me at 721 25th Street, Union City, NJ 07087.

14. My uncle, his wife and son did not send me or advise me of any mail from the Immigration Court or the Department [of Homeland Security] advising me to appear in Court on January 15, 2004.

Has the Petitioner here rebutted this weaker presumption of receipt which attends ordinary regular mail? The Ninth Circuit's decision in *Salta v. INS*, 314 F.3d 1076 (9th Cir. 2002), is instructive. The facts of *Salta* are similar to those at issue here. In *Salta*, the issue before the court was: "[H]ow an alien may meet the burden of demonstrating lack of notice under the new statute," which allows service by ordinary mail. *Salta v. INS*, 314 F.3d 1076, 1079 (9th Cir. 2002). The Ninth Circuit held, as we do, that service of such notices by ordinary mail is not entitled to the same presumption as service by certified mail. *Id*. The Court then held:

> Where a petitioner actually initiates a proceeding to obtain a benefit, appears at an earlier hearing, and has no motive to avoid the hearing, a sworn affidavit from [petitioner] that neither she nor a responsible party residing at her address received the notice should ordinarily be sufficient to rebut the presumption of delivery and entitle [petitioner] to an evidentiary hearing to consider the veracity of her allegations.

*Id*. Thus, under *Salta*, submission of an affidavit by an alien claiming non-receipt of a notice of hearing by him or her, or a responsible person residing at her address, along with circumstantial evidence corroborating the alien's claims of non-receipt may ordinarily be sufficient to raise a factual issue requiring an evidentiary hearing before the IJ.

After *Salta*, the Ninth Circuit further clarified the required evidentiary showing to entitle an alien to a hearing. In *Sembiring*, an alien, Sembiring, was ordered deported *in absentia* after she claimed that she had failed to receive a notice

11

rescheduling her deportation hearing. When Sembiring appeared on the original date of her hearing, she was notified that she had already been ordered deported six days earlier. Sembiring then wrote a letter to the IJ claiming non-receipt of the rescheduling notice. The letter was signed, but was neither sworn nor verified. Her letter was construed as a motion to reopen. The IJ denied this motion mainly because Sembiring failed to provide a sworn statement that she never received the notice rescheduling her hearing. The BIA affirmed.

*Sembiring* then applied *Salta* and held that the IJ and BIA abused their discretion by failing to reopen her proceedings. Specifically, the court noted that while "[w]e noted in *Salta* that an affidavit is one way to establish non-receipt of a notice sent by regular mail ... a sworn affidavit is not always necessary." *Sembiring*, 2007 U.S. App. LEXIS 20211, at \*23. The court further stated that "[t]he test for whether an alien has produced sufficient evidence to overcome the presumption of effective service by regular mail is practical and commonsensical rather than rigidly formulaic." *Id*. at \* 18.

The *Sembiring* court noted that Sembiring brought herself to the government's attention by seeking asylum, thereby showing that she did not have a motive to avoid the hearing. *Id*. at \*18-21. Furthermore, the record showed that she actually appeared at the originally scheduled hearing. *Id*. at \*21-22. Moreover, the government's evidence did not clearly show that it was actually mailed to Sembiring's address. *Id*. at \*22-23. Nevertheless, based on these facts, the Ninth Circuit held that "a sworn affidavit was not required to establish that Sembiring did not receive notice...." *Id*. at 23. Instead, the court stressed that:

> [T]he inquiry contemplated by *Salta* is a practical one under which many forms of evidence are relevant. If there is enough evidence to overcome the presumption of effective service without a sworn affidavit, the absence of such affidavit is not fatal to petitioner's [motion to reopen for non-receipt of notice].

*Id*. at \*23. Therefore, the court held that Sembiring had sufficiently rebutted the presumption of receipt and vacated the

12

*in absentia* removal order.

Petitioner, like Sembiring, may not have had a motive to avoid the scheduled hearing. She had little to gain by failing to appear at the hearing. Moreover, as a native and citizen of Cuba, she was entitled to apply for adjustment of status under the Cuban Adjustment Act, Pub. L. No. 89-732, Stat. 1161 (1966) (reproduced as historical note to 8 U.S.C. § 1255), which would allow her to apply for permanent residency after only one year of residing in the United States.

Furthermore, circumstantial evidence in the record disclosed that Petitioner at all times sought to have a hearing to adjust her status. While Petitioner had not filed a Form EOIR-33 notifying the Immigration Court of her address change, she had sought to acquaint the DHS with her change of address by having her uncle's wife, along with the Florida Department of Children & Families Services and the Catholic Charities of Southern Nevada, inform the DHS of her change of address. Petitioner also took affirmative action to have her counsel inquire as to her immigration status. It was only after her counsel investigated her status that she learned that an *in absentia* order had been issued removing her. As a result of her counsel's actions, counsel's affidavit attached the file that he had received through his Freedom of Information Act (FoIA) request. That file included the additional information which is summarized above. These attempts to communicate with the DHS, as reflected by the record, additionally support Petitioner's claim that she had not received notice of any hearing and might now suffice to rebut the presumption of effective notice which we announce today.

We do not wish to imply that, based on these circumstances, the IJ should have rescinded the *in absentia* order and reopened Petitioner's removal hearing. Indeed, it is significant that petitioner failed to follow the clear requirement that she give written notice of any change in her address, a fact that needs to be considered by the IJ in making the ultimate decision. The facts recited above, though, do appear relevant in determining whether Petitioner has rebutted the presumption of receipt of the Notice of Hearing.

In light of the fact that our decision today adopts a less

13

stringent standard for determining the presumption of receipt for notices of hearing sent by regular mail rather than the strong presumption employed by the BIA, *see Grijalva*, 21 I&N Dec. 27, and thus establishes a new and different standard when regular mail is used, we will vacate the BIA's order of May 9, 2005. Additionally, we will remand to the BIA with directions to reopen the *in absentia* order of removal and direct the BIA to instruct the IJ on remand to apply the less stringent presumption to the evidence which Petitioner may produce.[5] *See Adarand Constructors v. Pena*, 515 U.S. 200, 237 (1995) (remanding to lower court for application of new standard to facts presented).

---

[5]

In view of our opinion announcing a standard – a standard for regular mail notices – which in this case requires a remand to the IJ, we have no need to address the other arguments made by Petitioner, both of which involve the non-receipt of the hearing notice.

14