

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-20-2008

# Lin v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4167

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

## Recommended Citation

"Lin v. Atty Gen USA" (2008). *2008 Decisions*. Paper 1411.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1411

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4167
_____

FANG LIN,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A77 957 870)
Immigration Judge:  Donald Vincent Ferlise
_____

Submitted Under Third Circuit LAR 34.1(a)
January 10, 2008

Before:  FISHER, HARDIMAN and STAPLETON, *Circuit Judges*.

(Filed: March 20, 2008)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Appellant Fang Lin petitions for review of an order of the Board of Immigration

Appeals ("BIA") denying her application for asylum, withholding of removal, and

protection under the Convention Against Torture ("CAT").  For the reasons that follow, we will grant the petition in part and deny it in part.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case.  Therefore, we will set forth only those facts necessary to our analysis.

Petitioner was born on August 4, 1982, in Fujian, China, and is a Chinese national.  In 2000, she began dating Jian Xin Dan.  Though they lived together, the couple was denied a marriage certificate because Petitioner was underage.  Shortly after this, local "family planning cadres" told Petitioner that she was violating family planning policy and told her not to get pregnant.  When Petitioner refused to comply with their demands, they assaulted her boyfriend and escorted her to the local hospital where a doctor forcibly inserted an intrauterine device ("IUD").  In April 2001, officials told Petitioner to report for a gynecological exam.  About a month earlier, her IUD had fallen out, and fearing that this would be discovered, Petitioner went into hiding.  When the family planning cadres were unable to locate her, they threatened to destroy her home if she failed to report for her exam.  In June 2001, Petitioner fled to the United States.

Immigration Judge ("IJ") Donald V. Ferlise found Petitioner credible, but held that as a matter of law, she was not a "refugee" under the Immigration and Nationality Act ("INA").  The BIA adopted the IJ's credibility determination, but affirmed the decision of

2

the IJ on the grounds that the harm alleged did not rise to the level of persecution required to qualify for relief. The BIA did not clearly address the question of whether Petitioner was a "refugee." On September 21, 2006, Petitioner timely filed the petition presently before us.[1]

## II.

We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252. Where the BIA adopts some of the findings of the IJ and makes additional determinations as well, we will review the decisions of both the BIA and the IJ. *Santana Gonzalez v. Att'y Gen.*, 506 F.3d 274, 276 (3d Cir. 2007).

We review legal determinations of the BIA *de novo*. *Escobar v. Gonzales*, 417 F.3d 363, 365 (3d Cir. 2005). Such *de novo* review of the BIA's legal determinations is "subject to established principles of deference" as explained by the Supreme Court in *Chevron v. Nat. Res. Def. Council*, 467 U.S. 837 (1984), and as interpreted by this Court. *See Wang v. Ashcroft*, 368 F.3d 347, 349 (3d Cir. 2004). Whether a petitioner has established past persecution or a well-founded fear of future persecution is a question of fact, and must be upheld if supported by "substantial evidence" in the record. *Yu v. Att'y*

---

[1]The BIA affirmed the IJ's denial of Petitioner's CAT claim on the grounds that she had not shown that it was more likely than not that she would be tortured if returned to China. While Petitioner does request CAT relief, her brief barely mentions this claim and never explains why the IJ or the BIA erred in their determinations. Where a petitioner "does not press [a CAT] claim[] on appeal" we will therefore "deem th[e] claim[] waived." *Konan v. Att'y Gen.*, 432 F.3d 497, 500 & n.2 (3d Cir. 2005).

*Gen.*, 513 F.3d 346, 348 (3d Cir. 2008).  We treat the BIA's findings of fact as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B); *Lukwago v. Ashcroft*, 329 F.3d 157, 167 (3d Cir. 2003).

### III.

On appeal, Petitioner argues (1) that the IUD insertion, threats, and other actions taken against her, are harmful enough to "rise to the level of persecution" and (2) that this harm was on account of a "protected ground," in this case political opinion, because her resistance to the insertion of the IUD satisfies the "other resistance" prong of 8 U.S.C. § 1101(a)(42)(B).  Both (1) and (2) must be satisfied for Petitioner to prevail.  *Konan*, 432 F.3d at 501.

Asylum or withholding of removal can only be granted to a "refugee," defined as a person unable or unwilling to return to her own country "because of past persecution or because of a well-founded fear of future persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion."  *Id.* (quoting *Gao v. Ashcroft*, 299 F.3d 266, 271 (2002)).  In order to make out a claim for relief, an applicant must demonstrate (1) an act or acts of harm that rises to the level of persecution; (2) that is "on account of" one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either unable or unwilling to control.  *Id.*

4

It is a petitioner's burden to establish that the harm alleged "rises to the level of persecution." Persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Yu*, 513 F.3d at 348. Persecution "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Fatin v. I.N.S.*, 12 F.3d 1233, 1240 & n.10 (3d Cir. 1993). A law or practice must be "extreme" in nature to rise to the level of persecution. *Chen v. Ashcroft*, 381 F.3d 221, 231 (3d Cir. 2004).

An applicant must also show that the persecution she alleges was on account of a "protected ground." *Lukwago*, 329 F.3d at 167. Pursuant to a 1996 amendment of the INA, one of the ways an applicant may establish a "protected ground" is by showing that she was required to abort a pregnancy, was forcibly sterilized, or "for other resistance to a coercive population control program." 8 U.S.C. § 1101(a)(42)(B).[2]

---

[2]The full text of this amendment reads as follows:

> For purposes of determinations under this chapter, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure *or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion*, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

Illegal Immigration Reform and Immigrant Responsibility Act, § 601(a)(1), Pub. L. No. 104-208, 110 Stat. 3009. (emphasis added).

5

The IJ denied Petitioner's claim as a matter of law because he was "unwilling to expand the definition of refugee to an individual who is unwillingly made to wear an IUD." Petitioner appealed this decision to the BIA, which quoted the IJ's language, as well as the "other resistance to a coercive population control program" language of 8 U.S.C. § 1101(a)(42). However, the BIA did not expressly adopt or repudiate the IJ's determination that a petitioner who had an IUD forcibly inserted could not qualify as a "refugee" for "other resistance" to China's coercive population control policy. Instead, the BIA relied on a alternate ground, finding that as a factual matter, the level of harm alleged by Petitioner did not "rise to the level of persecution," relying on *Fatin*, 12 F.3d at 1240. The BIA acknowledged that forcible insertion of an IUD was an "offensive intrusion into the private sphere of life" that caused "some harm." It went on to state that while forcible IUD insertion could "under some set of circumstances not before us" constitute persecution, the harm here did not "rise to the level of persecution."

While our standard of review is "extraordinarily" deferential to the BIA, "the availability of judicial review (which is specifically provided in the INA) necessarily contemplates something for us to review." *Abdulai v. Ashcroft*, 239 F.3d 542, 555 (3d Cir. 2001). When the BIA fails to adequately explain its reasoning, such that it becomes "impossible for us to review its rationale," we will vacate and remand for further explanation of the decision. *Id.*

6

Here, the BIA states, in conclusory fashion, that Petitioner suffered "some harm," but that it was not "sufficient to rise to the level of persecution." Instead of providing an explanation for this conclusion, the BIA cursorily asserts that insertion of an IUD could under "some set of circumstances" create a harm rising to the level of persecution, but just not in the present case. The BIA does not give any further explanation of how the present case is insufficient, or what "set of circumstances" might raise a forcible IUD insertion to the level of persecution. The BIA does not state with specificity which facts it considered in reaching its decision that the level of harm was not sufficient to be considered persecution. The BIA did not support its decision by pointing to other hypothetical scenarios and distinguishing them from the instant case. Without such examples or explanation, we cannot meaningfully review the BIA's finding that the instant case falls short of its criteria for persecution.

Because a dearth of explanation and reasoning "makes it impossible to meaningfully review this decision," we will vacate and remand "so that the BIA can further explain its reasoning." *Konan*, 432 F.3d at 502 (citations omitted). We take no position on "whether substantial evidence *could* support" a finding in this particular case that forcible IUD insertion, threats, and other alleged harms did not "rise to the level" of persecution, but rather "leave [that] task to the BIA" to determine afresh. *Id.* at 502 n.3. Although Petitioner asks us reach the merits of this issue, in observation of our well-established principles of deference, we will allow the agency an opportunity to revisit this

7

issue and explain its decision in full.  *See, e.g., Butt v. Gonzales*, 429 F.3d 430, 438 (3d Cir. 2005) ("[A]lthough Butt asks us also to rule in his favor on the merits of his asylum claim, we decline his invitation in order to allow the agency the opportunity to review the substance of that claim.").

On remand, the BIA should therefore (1) reconsider whether the harm alleged rises to the level of persecution, explaining its reasoning in detail, as discussed *supra*.  Upon remand, the BIA should also (2) determine whether an applicant who is forcibly inserted with an IUD, and who subsequently flees the country to seek asylum in the United States, can satisfy the "protected ground" requirement via "other resistance to a coercive population control program" under 8 U.S.C. § 1101(a)(42)(B).[3]  Because the BIA's decision never clearly addresses this issue, it should be addressed on remand.  *Konan*, 432 F.3d at 502 ("[i]f the BIA failed to consider [a petitioner]'s claim of persecution based on [a particular protected ground], the case must be remanded." (citing *Vente v. Gonzales*, 415 F.3d 296 (3d Cir. 2005))).

---

[3]Although this question has been addressed to varying extents by our sister circuits, *see Yang v. Att'y Gen.*, 418 F.3d 1198, 1203-04 (11th Cir. 2005), it appears to be unresolved in this Circuit.  *See Fang v. Ashcroft*, 114 Fed. Appx. 486, 488 (3d Cir. 2004) (remanding to the BIA in part because "[a]s to the forced implantation of the IUD, the government concedes before this court that the Board and the Circuit Courts have not specifically addressed whether a woman who unwillingly acquiesced to obtaining an IUD has been persecuted [under the 'other resistance' clause]." (internal quotation marks omitted)) (nonprecedential).  Because Petitioner's brief before the BIA argued that she had suffered past persecution "from the coercive birth control policy," this claim was properly before the BIA and should have been addressed in its decision.

IV.

For the foregoing reasons, we will grant the petition with respect to the asylum and withholding of removal claims, vacate the BIA's order, and remand for further consideration consistent with this opinion. We will deny the petition with respect to the CAT claim.