

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-28-2008

# Samra v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2053

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Samra v. Atty Gen USA" (2008). *2008 Decisions.* Paper 615.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/615

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2053
_____

SAMIA RAYMOND BOU SAMRA,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A97-207-338)
Immigration Judge:  Honorable Charles M. Honeyman

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
AUGUST 27, 2008

Before:  BARRY, SMITH AND HARDIMAN, Circuit Judges

(Opinion filed : August 28, 2008)
_____

OPINION
_____

PER CURIAM

Petitioner, Samia Raymond Bou Samra ("Bou Samra"), petitions for review of a

final order of the Board of Immigration Appeals ("BIA").  For the following reasons, we

will deny the petition for review.

# I.

Bou Samra is a forty-four year old native and citizen of Lebanon. She arrived in the United States in 2002 as a non-immigrant B-2 visitor. In 2003, she filed an application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"). In her application and removal hearing testimony, she claimed to be an active supporter of the Free Patriotic Movement, an organization that was created to oppose "the interference and control of all sectors of the [Lebanese] government by the Syrians." (A.R. at 396.) While in Lebanon, she was allegedly targeted by Syrian intelligence agents because of her involvement with the Free Patriotic Movement and her support of its then-exiled leader, General Michel Aoun. In particular, she testified that Syrian agents chased her and tried to run her over with a car as she was returning home from work in 1998. She also claimed to have eluded arrest by Syrian agents after they interrupted a demonstration that she attended in Beirut on August 9, 2001. In 2002, during a government crackdown against supporters of General Aoun, Bou Samra allegedly went into hiding at the home of a friend. Bou Samra claimed that, while she was in hiding, a neighbor received a call on her intercom from an unidentified man with a Syrian accent who was looking for Bou Samra. The neighbor subsequently notified Bou Samra of this visit. The neighbor also stated that she saw a man driving

back and forth in the neighborhood looking up toward Bou Samra's apartment and checking the parking lot. Shortly afterward, Bou Samra departed for the United States.

Following a removal hearing on August 31, 2005, the Immigration Judge ("IJ") issued an oral decision denying the application because Bou Samra had not shown past persecution, a well-founded fear of future persecution, or a likelihood of torture. Bou Samra appealed that decision to the BIA. In challenging the IJ's past persecution finding, Bou Samra argued that the IJ did not sufficiently consider her claims that she had participated in demonstrations where others were arrested, and that "individuals" came to her home to look for her. She also argued that a remand was warranted because conditions in Lebanon had substantially changed since the IJ rendered his decision. The BIA dismissed the appeal. First, the BIA concluded that the incidents mentioned in Bou Samra's brief did not rise to the level of persecution. The BIA also determined that her testimony did not establish that she suffered any physical harm or mistreatment that amounted to persecution. As for her alleged fear of future persecution, the BIA agreed with the IJ that there was insufficient evidence to establish that supporters of General Aoun and the Free Patriotic Movement were being targeted following the 2005 withdrawal of Syrian troops from Lebanon, and the subsequent election of Free Patriotic Movement members to the Lebanese Parliament. Finally, the BIA determined that Bou Samra was not entitled to a remand based on the new evidence submitted on appeal, and that she was not eligible for CAT relief.

Bou Samra now petitions for review of the BIA's decision. In the petition, she challenges the BIA's decision to uphold the IJ's denial of her claims for asylum and withholding of removal. She does not challenge the denial of CAT relief, nor does she argue that the BIA improperly denied her request for a remand.

## II.

We have jurisdiction over the petition pursuant to 8 U.S.C. § 1252(a). Our review is generally limited to the BIA's order. See Li v. Att'y Gen., 400 F.3d 157, 162 (3d Cir. 2005) (citing Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002)). Where, as here, the BIA discusses and adopts some of the bases for the IJ's decision, we may consider the decisions of both the BIA and the IJ. See Santana Gonzalez v. Att'y Gen., 506 F.3d 274, 276 (3d Cir. 2007). "Whether an asylum applicant has demonstrated past persecution or a well-founded fear of future persecution is a factual determination reviewed under the substantial evidence standard." Gao, 299 F.3d at 272. Under that deferential standard, the findings must be upheld "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

To qualify for asylum under the Immigration and Nationality Act ("INA"), an applicant must establish that he or she is a "refugee" under 8 U.S.C. § 1158(b). A refugee is a person unable or unwilling to return to the country of removal "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. § 1101(a)(42). Once

4

an alien shows persecution on account of one of the enumerated grounds, there is a rebuttable presumption that the alien's fear of future persecution is well founded. 8 C.F.R. § 1208.13(b)(1); Lukwago v. Ashcroft, 329 F.3d 157, 174 (3d Cir. 2003). In the absence of past persecution, an alien may demonstrate a well-founded fear of persecution by showing a "subjective fear of persecution that is supported by objective evidence that persecution is a reasonable possibility." Abdille v. Ashcroft, 242 F.3d 477, 496 (3d Cir. 2001) (citation omitted).

First, we conclude that substantial evidence supports the BIA's finding that Bou Samra was not persecuted in Lebanon. Persecution under the INA "connotes extreme behavior, including 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.'" Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) (quoting Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993)); see also Jarbough v. Att'y Gen., 483 F.3d 184, 191 (3d Cir. 2007) ("Abusive treatment and harassment, while always deplorable, may not rise to the level of persecution."); Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005) (stating that isolated acts that do not result in serious injury may not amount to persecution). The BIA properly found that Bou Samra failed to demonstrate persecution based on her testimony, found credible, that she attended political rallies where others were arrested, and that she heard from a neighbor that an unidentified man with a Syrian accent visited her apartment building while she was not at home. The BIA also acted within its discretion to the extent it determined that

5

the other incidents recounted in Bou Samra's testimony did not amount to persecution.

We reject Bou Samra's contention that the BIA denied her claims of past persecution because she did not allege physical injury. There is no indication that the BIA viewed the absence of physical injury as dispositive of her claims. Rather, the BIA found that Bou Samra did not "suffer[] any physical harm or mistreatment that rises to the level of persecution." (A.R. at 2) (emphasis added). We also reject her argument concerning the significance of the IJ's statement that "some members of General Aoun's party or movement were targeted, threatened, jailed and sometimes mistreated in a manner that would rise [to] the level of persecution in 2001." (A.R. at 61.) The IJ's recognition that other group members might have suffered persecution in 2001 is not relevant here, inasmuch as substantial evidence supports the BIA's determination that Bou Samra herself did not experience persecution.

Substantial evidence also supports the BIA's determination that Bou Samra did not demonstrate a well-founded fear of persecution. As observed in the agency decisions, certain events have occurred since Bou Samra's departure from Lebanon which weaken her claim that she is in danger because of her political opinion. Notably, the record indicates that Syrian troops withdrew from Lebanon in April 2005 and that General Aoun returned from exile shortly afterward. The record also contains articles indicating that the Free Patriotic Movement is now an official political party in Lebanon, that several of its

6

members hold seats in the Lebanese Parliament, and that General Aoun has made efforts to conciliate with pro-Syrian factions. Bou Samra has not cited to any evidence in the record showing that supporters of General Aoun or the Free Patriotic Movement were still being targeted following the withdrawal of Syrian troops. Moreover, she has not cited to objective evidence indicating that such mistreatment took place in the years between her departure from Lebanon and the troop withdrawal. Although she notes that the record contains news articles indicating that Syrian intelligence agents remain in Lebanon and that anti-Syrian activists continue to be targeted, that evidence is not so compelling as to constitute grounds for reversing the BIA's finding that Bou Samra did not demonstrate an objectively reasonable fear of being singled out for persecution.

We further conclude that there is no merit to Bou Samra's claim that the IJ made credibility and corroboration findings that are unworthy of deference. It is far from clear that the IJ issued such findings, and even if he did, those findings are not before us because the BIA did not adopt or defer to them in the order dismissing the appeal. See Kayembe v. Ashcroft, 334 F.3d 231, 234-35 (3d Cir. 2003). We also reject Bou Samra's claim that the IJ improperly took administrative notice of facts relevant to his decision without giving her notice and an opportunity to respond. Although the IJ based his decision in part on recent changes in country conditions, there is no indication that he relied on evidence that was not part of the agency record as of the date of the removal hearing.

7

Because Bou Samra failed to meet her burden of establishing her eligibility for asylum, she necessarily failed to meet the higher standard of eligibility for withholding of removal. See Lukwago, 329 F.3d at 182.

Finally, we note that Bou Samra has submitted an appendix containing documents that were not part of the administrative record when the agency issued its final order of removal. Because we lack jurisdiction to consider this evidence in the first instance, see 8 U.S.C. § 1252(b)(4)(A), Respondent's motion to strike these materials and the arguments associated with them is granted.

### III.

For the foregoing reasons, we will deny the petition for review.