**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2362
_____

SHIN THING SUDIN,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099-941-237)
Immigration Judge:  Jeffrey L. Romig
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 25, 2011
Before:  AMBRO, HARDIMAN and STAPLETON, <u>Circuit</u> <u>Judges</u>

(Opinion filed: April 12, 2011)

_____

OPINION
_____

PER CURIAM

    Before us is a petition for review of an order of the Board of Immigration Appeals

("BIA"), denying the Petitioner's motion to reopen his removal proceedings.  We will

deny the petition.

Shin Thing Sudin, a 55-year-old ethnic Chinese native of North Sumatra and citizen of Indonesia, entered the United States on a six-month nonimmigrant visa in 2004. In 2007, the Department of Homeland Security ("DHS") placed Sudin in removal proceedings for overstaying his visa, in violation of INA § 237(a)(1)(B) [8 U.S.C. § 1227(a)(1)(B)]. Sudin conceded removability and applied for asylum, withholding from removal, and protection under the Convention against Torture ("CAT"). He claimed that he was persecuted for his Chinese ethnicity and Buddhist religion. Sudin testified at his removal hearing about the 1966 riots against ethnic Chinese in Sumatra (when he was a child), and the looting of his family's North Sumatran store in the 1998 riots. Sudin said that once he moved to Jakarta in 1983, he experienced no problems personally. He stated that he came to the United States because of the riots that had occurred in Indonesia in the past and because he saw some Indonesians kill a Chinese man and steal his motorbike. He said that his wife and 18-year-old son remain in Jakarta. Sudin testified that his son was beaten by unknown people who stole his cell phone and money. He said that he feared future persecution based on his Chinese ethnicity and Buddhist religion upon his return to Indonesia. To support his claim, Sudin submitted, among other things, the State Department's 2007 Country Report on Human Rights in Indonesia.

The Immigration Judge ("IJ") denied all forms of relief, finding that Sudin failed to show past persecution or that he held an objectively reasonable fear of future persecution based on his Chinese ethnicity and Buddhist religion. The BIA affirmed the

2

IJ's decision and dismissed Sudin's appeal in April 2009. Sudin did not file a petition for review.

In July 2009, Sudin filed a counseled motion to reopen before the BIA, submitting a documented report that two luxury hotels were bombed in Jakarta on July 17, 2009, which, Sudin claimed, was "perpetrated by extremists," and "underscore[d] the increasing dangers to the population of the country, particularly targeted groups like the Chinese minority." The BIA denied relief in August 2009, holding that the evidence failed to indicate changed country conditions in Indonesia sufficient to warrant reopening. Relying on our decision in Sioe Tjen Wong v. Attorney General, 539 F.3d 225 (3d Cir. 2008), the BIA also declined to consider Wakkary v. Holder, 558 F.3d 1049 (9th Cir. 2009), a case cited by Sudin in support of his claim. We dismissed Sudin's pro se appeal, filed in November 2009, as untimely. (C.A. No. 09-4297.) Sudin then submitted a motion (filed by new counsel) requesting that the BIA reissue its decision because his former counsel, who died in October 2009 after a long struggle with cancer, failed to file a timely petition for review on his behalf. The BIA granted the motion and reissued its decision on April 30, 2010. Proceeding pro se, Sudin filed a timely petition for review.

We have jurisdiction over this petition pursuant to INA § 242(a) [8 U.S.C. §1252(a)]. Where the BIA denies a motion to reopen for failure to establish a prima facie case, we review the BIA's ultimate decision to deny a motion to reopen for abuse of

3

discretion, and we review the underlying findings of fact for substantial evidence.[1]

Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002). Under the deferential abuse of discretion standard of review, we will not disturb the agency's decision unless it is arbitrary, irrational, or contrary to law. Santana Gonzalez v. Att'y Gen., 506 F.3d 274, 276 (3d Cir. 2007).

When the motion to reopen is based on changed country conditions, the movant must present evidence that is "material and was not available and could not have been discovered or presented at the former hearing," which is based on "changed circumstances arising in the country of nationality." 8 C.F.R. § 1003.2(c)(3)(ii). On petition for review, we consider whether the movant presented evidence of changed country conditions and whether the movant presented a prima facie case for asylum. Shardar v. Att'y Gen., 503 F.3d 308, 312 (3d Cir. 2007).

Sudin asserts that the BIA "failed to find changed country conditions towards the particularly targeted groups like the Chinese minority." The documentation Sudin submitted consisted of a "Notice to Americans" from the United States Embassy, dated July 17, 2009, announcing two bombings that had occurred at the Marriott and the Ritz Carlton Mega Kuningan Hotels in Jakarta. (A.R. 50, 55.) The notice did not mention

---

[1] We recently enforced the BIA's own regulation that forbids it from reviewing an Immigration Judge's findings of facts de novo. Huang v. Att'y Gen., 620 F.3d 372 (3d Cir. 2010); 8 C.F.R. § 1003.1(d)(3)(i). In other words, when reviewing an Immigration Judge's decision, the BIA is precluded from finding facts. However, when considering a motion to reopen, the BIA has the responsibility of considering the facts in the first instance. 8 C.F.R. § 1003.2(c)(3)(ii).

4

ethnic Chinese or any Indonesian minority. Rather, it warned American citizens living and traveling in Indonesia to stay in contact with the Embassy for further updates, and advised American citizens to apprise close family members or friends of their wellbeing. (Id. at 55.) The notice, which addresses itself to American citizens living or travelling in Indonesia, does not identify the perpetrators of the bombings nor does it state that ethnic Chinese who practiced Buddhism were targeted in particular. Sudin did not offer any evidence that the Indonesian government was responsible for, or was "unable or unwilling to control," the violent acts of its civilians. We have long held that evidence of generalized violence, alone, does not constitute persecution for asylum purposes. See Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005). Accordingly, the record evidence does not convince us that the BIA abused its discretion in denying reopening.

Next, we are not persuaded by Sudin's argument that the BIA wrongly declined to consider Wakkary v. Holder, 558 F.3d 1049 (9th Cir. 2009). At the time that the BIA rendered its decision, we had already rejected the Ninth Circuit's "disfavored group" approach as discussed in Singh v. INS, 94 F.3d 1353 (9th Cir. 1996), refined in Sael v. Ashcroft, 386 F.3d 922, 925 (9th Cir. 2004), and explained and extended to withholding of removal cases in Wakkary. See Lie v. Ashcroft, 396 F.3d at 538 n.4; Sioe Tien Wong v. Attorney General, 539 F.3d at 235 n.5 (declining to reconsider our decision in Lie). The BIA did not err in declining to consider Wakkary, and even if we could, we see no reason to revisit our long held precedent here, as adoption of Ninth Circuit's approach would not change the result in this case. Here, Sudin presented no evidence to support a

5

prima facie showing on reopening that he, in particular, was likely to be targeted for persecution as a member of a disfavored group of ethnic Chinese Buddhists.  See Sael, 386 F.3d at 925 ("an applicant may prove that she is a member of a 'disfavored group' coupled with a showing that she, in particular, is likely to be targeted as a member of that group").

For the foregoing reasons, we will deny the petition for review.