**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4088
_____

JAIME CORDERO-GUERRA,

Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of an Order
of the Board of Immigration Appeals
(B.I.A. No. A077-256-470)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 8, 2017
_____

Before: CHAGARES, VANASKIE, and FUENTES, *Circuit Judges*

(Filed: November 16, 2017)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge.*

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

This immigration appeal centers on whether Petitioner Jaime Cordero-Guerra has presented sufficient evidence to undo a 19-year-old default removal order. Cordero-Guerra came to the United States from Guatemala at age 13, and is now the father of two U.S. citizens. He has no criminal record. But in 1998, a removal order *in absentia* was entered against him after he failed to appear at a removal hearing. In 2015, Cordero-Guerra hired an attorney who helped him file an unsuccessful motion to reopen his 1998 case. On appeal, Cordero-Guerra makes two arguments in support of his motion—he never received notice of the 1998 hearing, and changed country conditions warrant relief. To receive relief, however, Cordero-Guerra must present evidence supporting his claims. A sufficient level of evidentiary support has not been brought forward, and we will therefore deny Cordero-Guerra's petition for review.

## I.

Jaime Cordero-Guerra Guerra was born in Guatemala in 1975. At age 13, Cordero-Guerra entered the United States without inspection and settled in Horsham, Pennsylvania, with a brother who had also entered the United States.

When Cordero-Guerra was 21 or 22, he traveled to Guatemala for approximately one year. Upon his return in 1998, he was apprehended by U.S. Border Control. Removal proceedings began. Cordero-Guerra posted bond after he provided the Government with his Horsham address, and he traveled back to Pennsylvania. The Immigration Court scheduled a removal hearing and mailed notice to the Horsham address. Cordero-Guerra failed to appear and the Immigration Court entered a removal order *in absentia* against him.

In the midst of this 1997-98 period, Cordero-Guerra's girlfriend, Milagro de Jesus Alarcon Ortega, gave birth in Guatemala to the couple's first child. Cordero-Guerra returned to Guatemala in 2001 to marry Ortega. His second return to the United States occurred without incident. Ortega gave birth to the couple's second child in Guatemala, then followed Cordero-Guerra to the United States with the two children in tow. In 2007 and 2012, the couple gave birth to two children in Montgomery County, Pennsylvania. Those children are U.S. citizens.

In 2015, as the United States announced a later-scuttled administrative program to defer enforcement actions against certain undocumented aliens who were parents of U.S. citizens, Cordero-Guerra hired an attorney to try to clear up his immigration status. With his attorney's assistance, he contacted the Immigration Court and filed a motion to reopen his removal proceedings to rescind the *in absentia* removal order. Cordero-Guerra also sought asylum, withholding of removal, and protection under the Convention Against Torture. The Immigration Judge denied rescission of the removal order because Cordero-Guerra had failed to rebut the presumption that proper notice of the 1998 removal hearing had been given. The Immigration Judge also denied Cordero-Guerra's requests for asylum, withholding of removal, and protection under the Convention Against Torture. The Board of Immigration Appeals affirmed, and Cordero-Guerra now petitions this Court for review.

## II.

We have jurisdiction under 8 U.S.C. § 1252, and venue is proper because the Immigration Judge completed Cordero-Guerra's proceedings in Philadelphia,

3

Pennsylvania. *Id.* § 1252(b)(2). We review the BIA's denial of a motion to reopen for abuse of discretion. *Santana Gonzalez v. Att'y Gen.*, 506 F.3d 274, 276 (3d Cir. 2007).

## III.

Generally, an alien must seek to reopen his or her case within ninety days of the entry of a final removal order. 8 U.S.C. § 1229a(c)(7)(C)(i). Here, Cordero-Guerra filed his motion more than seventeen years after his removal order became final in 1998. Thus, Cordero-Guerra's motion is untimely under the general rule. Exceptions do exist, however, and Cordero-Guerra's case explores two of them: (1) the failure of the Government to provide notice of the removal hearing, and (2) changed country conditions in the alien's country of nationality.

### A.     Notice

The first at-issue exception involves the Government's purported failure to provide notice. If the Government fails to provide an alien with notice of his removal hearing, the alien may file a timely motion to reopen even after the 90-day period has expired. 8 U.S.C. § 1229a(b)(5)(C)(ii). If the alien's motion shows that notice was ineffective, the motion is not untimely, the removal order may be rescinded, and the case may be reopened. *Id.* In practice, the timeliness and notice issues run together: either notice was ineffective and the motion to reopen is timely, or notice was effective and the motion is untimely. In proving that notice was ineffective, it is the alien who bears the burden of production and proof. *See Pllumi v. Att'y Gen.*, 642 F.3d 155, 161 (3d Cir. 2011) (citing 8 C.F.R. § 1003.2(c)) ("The burden of proof on a motion to reopen is on the alien to establish eligibility for the requested relief.").

4

Notice may be made effective either by personal service or service by mail. 8 U.S.C. § 1229(a)(1)-(2). Service by mail "shall be considered sufficient . . . if provided at the most recent address" supplied by the alien, 8 U.S.C. § 1229a(b)(5)(A), but that presumption may be rebutted by an alien's bare denial of receipt of notice if that denial is supported by "circumstantial evidence corroborating the alien's claims." *Santana Gonzalez*, 506 F.3d at 280. For example, in *Santana Gonzalez*, we ordered a case to be reopened where the alien denied that she had received notice because that denial was supported by two corroborating facts: (1) the alien's Cuban nationality suggested she lacked a motivation to lie because the Cuban Adjustment Act made similarly-situated Cuban citizens categorically entitled to relief, and (2) the alien had taken repeated affirmative steps to adjust her status, having a relative, an attorney, and two Florida state agencies contact the U.S. Department of Homeland Security on her behalf. *Id.* at 280-81.

Here, the Government attempted service at the address that Cordero-Guerra provided, and the United States received no indication of any problem with that attempt. Cordero-Guerra states in an affidavit that he never received the mailed service papers, but aside from that denial, he has submitted no corroborating evidence. For example, his affidavit does not dispute that he was living at the Horsham address to which service was sent. It also does not indicate that he had trouble receiving his mail either from the mail carrier or from any co-tenants. He submitted no affidavits from family members or neighbors indicating a problem with his mail. And, unlike the alien in *Santana Gonzalez*, Cordero-Guerra is not Cuban and has provided no evidence of any prior efforts to address his status. Instead, all that is before us are two conflicting pieces of evidence—Cordero-

5

Guerra's uncorroborated assertion that he never received notice, and the Attorney General's assertion to the contrary that notice was mailed to Cordero-Guerra's address. Because it is Cordero-Guerra's burden to carry, we cannot rule in his favor.[1]

## B.     Changed Country Conditions

The second exception pertains to changed country conditions. The BIA is obligated to grant a motion to reopen that is otherwise untimely if the alien can make a *prima facie* showing that conditions in the alien's country of nationality have changed since the removal hearing such that asylum or withholding of removal is warranted. 8 U.S.C. § 1229a(c)(7)(C)(ii); *I.N.S v. Doherty*, 502 U.S. 314, 323 (1992).

The BIA cited several factors that cut against a finding that Guatemala has grown dangerous enough to warrant relief: Cordero-Guerra does not suggest he was threatened with or subjected to violence during his 2001 trip to Guatemala; Cordero-Guerra did not seek asylum from 1998 to 2015, suggesting that at least during that time period he lacked a fear of threats of violence in his home country; and Cordero-Guerra has presented no evidence that his family currently residing in Guatemala is threatened with or subjected to violence.

Cordero-Guerra does not point us to any evidence in the record of changed conditions in Guatemala that conceivably could warrant asylum or withholding of

---

[1] Related to the notice issue is Cordero-Guerra's procedural due process argument that the removal order violated the Fifth Amendment because it was issued without notice. The Attorney General argues we lack jurisdiction to consider this argument because Cordero-Guerra failed to present it to the BIA. But either way, the argument folds back on the notice issue, and so we need not reach it: Cordero-Guerra has not shown that notice was ineffective, and so Cordero-Guerra's Fifth Amendment argument that ineffective notice violated his right to due process cannot possibly succeed.

removal. He does not dispute the Government's assertion that his family members have remained in Guatemala without incident. Instead, he asserts that his children will "be subject to extreme and usual [sic] hardship" if he is removed. (Petitioner Br. at 25.) But Cordero-Guerra has cited no legal authority that purports to support the contention that hardship to his children is an adequate basis for a changed-country-conditions finding, and we are aware of none. We therefore conclude that the BIA did not abuse its discretion in denying Cordero-Guerra's motion to reopen based upon his changed-country-conditions argument.

## IV.

Because neither the ineffective-notice nor changed-country-conditions exceptions to the ninety-day limitations period on Cordero-Guerra's motion to reopen apply, the BIA was correct in finding that Cordero-Guerra's motion was untimely. We will deny Cordero-Guerra's petition for review.