

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-18-2008

# Dianie v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2598

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Dianie v. Atty Gen USA" (2008). *2008 Decisions.* Paper 520.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/520

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-2598

ROS DIANIE; ACHMAD KARIM DJAELANI;
FADILLAH DJAELANI; RIZKY DJAELANI,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
BIA Nos. A95-460-346/347/348/349
(U.S. Immigration Judge: Honorable Rosalind K. Malloy)

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 8, 2008
Before: SCIRICA, *Chief Judge*, McKEE and SMITH, *Circuit Judges*.

(Filed: September 18, 2008 )

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

Ros Dianie, her husband, Achmad Karim Djaelani, and their two minor sons,

Fadillah and Rizky Djaelani, all natives and citizens of Indonesia, petition for review of

an order of the Board of Immigration Appeals (BIA) dismissing their appeal and affirming an Immigration Judge's denial of their application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT").[1] We will deny the petition.

## I.

Dianie, an Indonesian native and citizen, entered the United States with her two sons on non-immigrant visas on October 2, 2001. Djaelani, her husband, had similarly been admitted as a non-immigrant visitor on May 17, 2001. On May 30, 2002, the Government served petitioners with Notices to Appear charging them as removable under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for overstaying their visas. Petitioners conceded the charges of removal but applied for asylum, withholding of removal, and protection under the CAT. Specifically, Dianie alleged that she had been persecuted in Indonesia on the basis of her perceived ethnicity and religious practice. Her claims of ethnic persecution relate to a rape she suffered during the major riots that occurred in Jakarta in May 1998. Dianie was working in her mother-in-law's restaurant in the city at the time. According to Dianie's account, a group of men entered and began to destroy property. Dianie heard one rioter state that the restaurant must be destroyed because it belonged to Chinese people. One man grabbed her and, despite her protests that she was not Chinese, pulled her into a storage room and raped her. Although Dianie identifies

_____

[1]Dianie is the lead petitioner. Her husband and children have derivative claims.

herself as ethnically Indonesian, she testified her maternal grandmother was ethnically Chinese and she is often perceived to be Chinese by other Indonesians because of her physical features. When Dianie and her husband reported the attack to the police the next day—during which the riots continued—the police suggested an arrest would be unlikely, since they did not know the identity of her assailant and had to contend with many people who had been victimized during the riots.

Dianie's claims of religious persecution stem from threats and physical mistreatment by her husband's family. Raised as a Catholic, Dianie converted to Islam, the religion of her husband and his family, at the time of her marriage. Her husband's family appears to have been constantly dissatisfied with her level of religious practice and with her upbringing of her children. Her brother-in-law, Jamal, was especially hostile and aggressive in his disapproval, despite her husband's attempts to protect her. On two occasions during her pregnancies, Jamal pushed her to the floor in reaction to her ostensibly deficient religious practices, also slapping her in the face during the second incident. In addition, her husband's family threatened several times to kill her if she did not reform her religious observance. Pretending that she and her husband were divorced, Dianie fled to another location in Indonesia, but her husband's family tracked her down. She then fled to yet another location, only to be found by two of her brothers-in-law, who beat her when she refused to return with them to Jakarta. Dianie reported this attack to the police, but they took no action, claiming to believe the statements of her brothers-in-

3

law that she was lying.  Shortly thereafter, Dianie and her children left Indonesia for the United States.

After a merits hearing, the Immigration Judge (IJ) denied petitioners' claims for relief in an oral decision dated April 26, 2004, finding Dianie had not met her burden of showing past persecution, a well-founded fear of future persecution, or a likelihood of torture.  On September 30, 2005, the BIA dismissed petitioner's appeal of the IJ's decision.  The BIA agreed Dianie had not adequately demonstrated the violence she suffered in the 1998 riots was on account of her real or perceived ethnicity.  In the alternative, the BIA concluded the information in the record evinced a fundamental change in circumstances in Indonesia such that ethnically motivated violence against Dianie in the future was unlikely.  Furthermore, the BIA found Dianie had not demonstrated the Indonesian government was unable or unwilling to protect her from her mistreatment by her husband's family on account of her religious practices.

The BIA reissued its decision on May 1, 2007.  This timely appeal followed. Although petitioners' original petition for review included a claim for relief under the CAT, petitioners have conceded they did not adequately raise this issue before the BIA. Petr.'s Reply Br. 17-18; *see* 8 U.S.C. § 1252(d)(1); *Abdulrahman v. Ashcroft*, 330 F.3d 587, 594-95 (3d Cir. 2003) ("[A]n alien is required to raise and exhaust his or her remedies as to each claim or ground for relief if he or she is to preserve the right of

judicial review of that claim . . . .").  Accordingly, we consider below only the claims for asylum and withholding of removal.[2]

## II.

To qualify for asylum, an applicant must establish she is a "refugee" under 8 U.S.C. § 1158(b), that is, a person unable or unwilling to return to the country of removal "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). Persecution involves "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom," *Fatin v. I.N.S.*, 12 F.3d 1233, 1240 & n.10 (3d Cir. 1993), and includes only acts "committed either by the government or by forces that the government is either unable or unwilling to control," *Mulanga v. Ashcroft*, 349 F.3d 123, 132 (3d Cir. 2003).  Once an applicant establishes persecution on account of one of the specified grounds, there is a presumption that her fear of future persecution is well-founded.  That presumption may be rebutted by a finding that there has been a fundamental change in circumstances in the applicant's

---

[2]We have jurisdiction over the petition under 8 U.S.C. § 1252.  Where, as here, the BIA discusses and adopts some of the bases for the IJ's decision, we may consider the decisions of both the BIA and the IJ.  *Santana Gonzalez v. Att'y Gen.*, 506 F.3d 274, 276 (3d Cir. 2007).  We review administrative determinations as to asylum and withholding of removal for substantial evidence.  Under this "extraordinarily deferential" standard, *Abdulrahman*, 330 F.3d at 598, the agency's determinations "must be upheld unless the evidence not only supports a contrary conclusion, but compels it," *Abdille v. Ashcroft*, 242 F.3d 477, 483-84 (3d Cir. 2001).

country of nationality such that she no longer has a well-founded fear of persecution, or that the applicant could avoid future persecution by relocating to another part of that country. 8 C.F.R. 1208.13(b)(1). In the absence of past persecution, an alien may establish a well-founded fear of persecution by demonstrating "both a subjectively genuine fear of persecution and an objectively reasonable possibility of persecution." *Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir. 2003) (emphasis omitted).

## A.

Substantial evidence supports the BIA's determination that Dianie was not persecuted on account of her real or perceived ethnicity. We agree with petitioners that it was improper for the IJ to conclude, on the basis of her own observations of the physical features of Chinese and Indonesians, that Dianie's testimony that she is often viewed by other Indonesians as ethnically Chinese was incredible. But the BIA rightly criticized this finding as inappropriate and did not rely on it in its opinion. Even if we accept as true the entirety of Dianie's account of the 1998 incident in Jakarta, we cannot say the record compels a conclusion contrary to that reached by the BIA. Rape is certainly the kind of severe crime that may rise to the level of persecution. Indeed, "[r]ape can constitute torture." *Id*. at 472. But a reasonable factfinder could find, as the BIA did, that petitioners have not adequately demonstrated Dianie was raped on account of her ethnicity. That one of the rioters allegedly stated the restaurant should be destroyed because it belonged to Chinese does not compel a contrary determination. In *Lie v.*

6

*Ashcroft*, another case involving the anti-Chinese violence in Indonesia in the late 1990's, we agreed with the BIA that neither a "single ethnic slur," nor "evidence of general ethnic difficulties" during the time period in question was sufficient to demonstrate that an attack was motivated by the perceived ethnicity of the victim. 396 F.3d 530, 535 (3d Cir. 2005). In *Lie*, the petitioners alleged that their attackers had called each of them a "Chinese pig" during two different robberies. Here, the evidence Dianie was singled out for attack because of her perceived ethnicity is even less conclusive. The sole anti-Chinese statement was directed against the owners of the restaurant and not specifically against Dianie. Furthermore, Dianie informed her attacker she was not Chinese, and he replied he did not care. These circumstances do not present a stronger case for an ethnically motivated attack than existed in *Lie*. Even assuming the rape was ethnically motivated, there is no evidence that it was committed by the government or by forces that the government was unable or unwilling to control. While the police expressed skepticism that, given the circumstances, they would be able to bring the perpetrator to justice, there is no indication that the police were generally unwilling or unable to control rapes of ethnically Chinese women. Petitioners argue that because "the Indonesian police did not protect [Dianie], they were unable and unwilling to do so." Petr.'s Reply Br. 2. But if this were true, then any ethnically motivated crimes perpetrated by private citizens—or, on a narrower interpretation of petitioners' proposition, at least those that remain unsolved by the police—would qualify the victim for asylum. Such a result would

7

reduce the requirement of a meaningful nexus between the government and the persecutional acts to a virtual nullity. For these reasons, we conclude the BIA's finding there was no past persecution is supported by substantial evidence.

We also agree that petitioners have not succeeded in demonstrating a well-founded fear she would be singled out for future ethnic persecution, or that there is a pattern or practice of persecution in Indonesia against ethnic Chinese. As the BIA pointed out, the record shows the treatment of ethnic Chinese in Indonesia has improved since the 1998 riots. In *Lie*, we found no pattern or practice of persecution against ethnic Chinese existed because the violence in Indonesia is insufficiently widespread and appears to be "wrought by fellow citizens" rather than caused by "governmental action or acquiescence." *Lie*, 396 F.3d at 537-38. Nothing in the record demonstrates subsequent developments compelling a revision of that determination. *See Sukwanputra v. Gonzales*, 434 F.3d 627, 637 n.10 (3d Cir. 2006); *see also Wong v. Att'y Gen.*, No. 06-3539, 2008 U.S. App. LEXIS 17720, at *19-21 (Aug. 20, 2008) (affirming the continuing validity of *Lie*'s finding in light of more recent reports of Indonesian conditions).

## B.

Petitioners are similarly unable to show no reasonable factfinder could conclude, as did the BIA, that Dianie was not subject to religious persecution. In their briefs, petitioners vigorously contest the BIA's and IJ's finding that inconsistencies in Dianie's and her husband's accounts of his family's mistreatment undercut the credibility of her

8

allegations. But accepting her allegations of abuse, we find sufficient evidence to support the BIA's and IJ's determination that this abuse was not the product of governmental acquiescence but rather a matter of private actors. Petitioners cite *Matter of S-A-*, 22 I. & N. Dec. 1328 (BIA 2000), for the proposition that family abuse over differences in religious practice can constitute persecution, but that case is distinguishable. In *Matter of S-A-*, the BIA found the abuse inflicted on petitioner by her father amounted to persecution, but the Board emphasized that in Morocco, the proposed country of removal, it would have been "not only unproductive but potentially dangerous" for the petitioner to have sought governmental protection. Testimony by the petitioner and her aunt, as well as reports by the U.S. government, demonstrated that "the judicial procedure is skewed against" women who complain of domestic abuse. The record in this case is insufficient to compel such a finding regarding the Indonesian authorities. Only one incident was reported to the police—the beating of Dianie by two of her brothers-in-law after she had fled Jakarta.[3] Although the police apparently did not believe her, this fact does not compel a finding that the Indonesian police were generally unwilling to protect her or other women from domestic abuse, nor does the record demonstrate that the police would be unwilling to protect her in the future, or that there is a pattern or practice of governmental acquiescence to domestic abuse. In short, substantial evidence supports the

---

[3] Although Dianie's husband initially told her he had reported to the police his family's attempt to abduct and circumcise their son, apparently he had not actually done so. A.R. 198.

BIA's finding that petitioners do not qualify for asylum because they have not established past persecution or a well-founded fear of future persecution on account of Dianie's religious practice.

## III.

In order to qualify for withholding of removal, petitioners must show a clear probability that their "[lives] or freedom would be threatened in [the country of removal] because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *Chen v. Gonzales*, 434 F.3d 212, 216 (3d Cir. 2005). This is "a more rigorous standard than the 'well-founded fear' standard for asylum. Thus, if an alien fails to establish the well-founded fear of persecution required for a grant of asylum, he or she will, by definition, have failed to establish the clear probability of persecution required for withholding of deportation." *Zubeda*, 333 F.3d at 469-70 (citation omitted). Having found petitioners have not demonstrated eligibility for asylum, we must also find they have not established their entitlement to withholding of removal.

For the foregoing reasons, we will deny the petition for review.