**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2558
_____

DANIEL O. RAMOS-OLIVIERI,
Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
Respondent
_____

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS
(Agency No. A095-833-985)
Immigration Judge:  Hon. Henry S. Dogin
_____

Submitted Under Third Circuit LAR 34.1(a)
September 14, 2010
_____

Before: SLOVITER, BARRY and SMITH, Circuit Judges

(Opinion Filed: September 17, 2010)
_____

Lauren Anselowitz, Esq.
Frank & York
60 Park Place
Suite 1010
Newark, NJ 07102

Counsel for Petitioner


Marion E. Guyton, Esq.
Eric H. Holder, Jr., Esq.
Thomas W. Hussey, Esq.
Joanna L. Watson, Esq.
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Anthony P. Nicastro, Esq.
United States Department of Justice
Office of Immigration Litigation
8040N
1331 Pennsylvania Avenue, N.W.
Washington, DC 20530-0000

Counsel for Respondent

_____

OPINION OF THE COURT
_____

BARRY, Circuit Judge

Petitioner Daniel Ramos-Olivieri, a native and citizen of Uruguay, entered the United States in February 2001 as a nonimmigrant visitor with authorization to stay for six months. He overstayed his visa. On April 6, 2004, the Department of Homeland Security ("DHS") issued a warrant for his arrest and took him into custody. Ramos was personally served with a Notice to Appear ("NTA"), charging that he was removable pursuant to 8 U.S.C. § 1227(a)(1)(B) as an alien who remained in the United States for a time longer than permitted. The date and time of the removal hearing were to be set. The NTA reflected Ramos's current address in North Bergen, and,

2

according to the NTA, Ramos was orally notified in Spanish of the charges against him and the consequences of failing to appear for his removal hearing. The NTA stated in English that an alien is required to immediately inform the Immigration Court of a change in address.

Ramos was released from custody on his own recognizance. As a condition of that release, Ramos was not to change his place of residence without first securing written permission from his immigration officer. Ramos's signature appears on the Order of Release following his acknowledgment that he understood his conditions of release.

Six months later, in October, 2004, Ramos moved from his North Bergen apartment without notifying immigration authorities of his change of address. The Immigration Court sent him a Notice of Hearing by regular mail to the North Bergen address on or about December 4, 2004, for a hearing to take place on January 5, 2005. The hearing took place in Ramos's absence and he was ordered removed *in absentia* to Uruguay.

In March 2007, Ramos married a naturalized United States citizen, Susana Pineyro. When the couple consulted an immigration attorney to begin the paperwork to adjust his status, Ramos learned of the Order of Removal. In April 2007, he filed a motion to reopen removal proceedings pursuant to 8 C.F.R. § 1003.23(b)(4)(iii)(A)(2). He emphasized that he was requesting reopening because, had he known about the hearing, he would have appeared. He stated that he was at his North Bergen apartment for six months and waited a reasonable amount of time before he moved; however, he never received notice of the hearing.

The Immigration Judge ("IJ") denied the motion to reopen. The IJ reasoned that the NTA had been personally served on Ramos, and once an alien has been served with a NTA, it is incumbent upon the alien to make U.S. Citizenship & Immigration Services aware of any change of address.

Furthermore, when Ramos was released from immigration custody in April 2004, it was on the condition that he not change his place of residence without first securing written permission from immigration authorities. The IJ concluded that, because Ramos admitted that he moved prior to the mailing of his hearing notice, and the record was devoid of any evidence that he complied with his obligation to notify the Immigration Court of a change in address, no notice of his hearing was required. Thus, reopening was unwarranted.

Ramos appealed to the Board of Immigration Appeals ("Board"), contending that he did not actually receive notice of his removal hearing because he moved before it was mailed to him, and he was not informed in Spanish that he was obligated to inform the Immigration Court of any change of address. The Board dismissed his appeal. It reasoned that the NTA, which explains the consequences of failing to appear, was read to Ramos in Spanish, the hearing notice was sent to the address he provided, and an immigration officer had certified that Ramos was notified that he was required to inform the Immigration Court of any change of address. It also faulted Ramos for making no effort over a three-year period to learn the status of his immigration proceedings. It held that the law does not require written notice if an alien has failed to provide the address required under 8 U.S.C. § 1229(a)(1)(F). See also 8 U.S.C. § 1229a(b)(5)(B) ("No written notice shall be required under subparagraph (A) if the alien has failed to provide the address required under [8 U.S.C. § 1229(a)(1)(F)]."); In re Villalba, 21 I. & N. Dec. 842, 845 (BIA 1997) (language contained in Order to Show Cause and Notice of Hearing, which provided that notice of deportation hearings will be sent only to alien's last known address, and failure to provide an address may result in an *in absentia* hearing, is reasonable construction of notice requirement). Albeit recognizing that Ramos was now married to a United States citizen, the Board concluded that Ramos was statutorily ineligible to adjust his status because he failed to appear for his removal hearing, see 8 U.S.C. § 1229a(b)(7). It concluded, as well, that even if the record supported his claim that he was not notified of his removal hearing, which it did not,

4

Ramos's motion to reopen was untimely.

Ramos petitioned for review, and the DHS filed an unopposed motion to remand so that the Board could determine whether its decision should be reconsidered in light of Santana Gonzalez v. Attorney General, 506 F.3d 274 (3d Cir. 2007). We granted the motion.

On remand, the Board again dismissed the appeal, concluding that Santana Gonzalez was inapplicable and thus reconsideration was unwarranted. The Board repeated much of what it had said before, emphasizing that Ramos was personally served with the NTA, which was read to him in Spanish and included notification of the requirement that he inform the Immigration Court of any change of address. Moreover, Ramos was informed of this requirement when he was released from custody, and the record was devoid of any evidence that he informed the Immigration Court or any immigration officer that he had moved. The Board distinguished Santana Gonzalez by noting that, although the alien there was no longer at the address she had provided, a responsible person was available at the address to forward her mail. Because Ramos did not provide notice of a change of address, the Board again concluded that notice was not required under 8 U.S.C. § 1229a(b)(5)(B).

Ramos timely petitioned for review. We have jurisdiction under 8 U.S.C. § 1252(a), (b)(1). "We review the denial of a motion to reopen a removal order entered *in absentia* for abuse of discretion." Cabrera-Perez v. Gonzales, 456 F.3d 109, 115 (3d Cir. 2006) (citing INS v. Doherty, 502 U.S. 314, 323-24 (1992)). "Under the abuse of discretion standard, the Board's decision is reversible only if it is 'arbitrary, irrational, or contrary to law.'" Barker v. Ashcroft, 382 F.3d 313, 316 (3d Cir. 2003) (quoting Tipu v. INS, 20 F.3d 580, 582 (3d Cir. 1994)).

An alien must be provided written notice of his or her removal proceedings. 8 U.S.C. § 1229(a)(1). The notice must inform the alien of, among other things, "[t]he time and the

5

place at which the proceedings will be held." 8 U.S.C. § 1229 (a)(1)(G)(i). Written notice must be given to the alien in person, or, "if personal service is not practicable, through service by mail." 8 U.S.C. § 1229(a)(1), (2)(A). Written notice by the Attorney General is sufficient if "provided at the most recent address provided" by the alien. 8 U.S.C. § 1229a(b)(5)(A).

Although written notice is sufficient if mailed to the most recent address provided by the alien, the statute also provides that an *in absentia* removal order may be rescinded, upon a motion to reopen filed at any time, where the alien demonstrates that he did not "receive" notice of the hearing. 8 U.S.C. § 1229a(b)(5)(C)(ii). In Santana Gonzalez, we considered two questions: "(1) what presumption of receipt attaches to a notice of hearing sent by regular mail; and (2) how an alien claiming non-receipt of a notice sent by regular mail can rebut that presumption, thereby entitling her to an evidentiary hearing on that claim." 506 F.3d at 274-75. Santana Gonzalez holds that the fact that notice was sent by regular mail to the last address provided by the alien does not necessarily establish that the alien has received the notice under § 1229a(b)(5)(C)(ii). The word "receive" indicates that the focus of the rescission inquiry, in contrast to the focus of the initial entry of the *in absentia* order, is on the actual receipt of the required notice and not whether the notice was properly mailed. Santana Gonzalez, 506 F.3d at 277.

In Santana Gonzalez, we adopted a standard providing that a strong presumption of receipt applies only when a notice from an Immigration Court is sent by certified mail; a weaker presumption of receipt applies when the notice is sent by regular mail. Id. at 279. An alien's affidavit claiming non-receipt of a notice sent by regular mail, along with corroborating circumstantial evidence, may be sufficient to raise a factual issue requiring an evidentiary hearing before the IJ. See id. at 280. But this surely does not mean that the failure to receive notice of a removal hearing entitles an alien to rescission if that failure is the result of the alien's neglect of his or her obligation to keep the Immigration Court informed of a current address. This is especially so when the obligation is also a condition of release.

6

Santana Gonzalez does not hold that an alien is entitled to an evidentiary hearing when the alien both fails to arrange for a responsible person who still resides at the alien's former address to forward all mail he or she receives *and* the alien fails to notify immigration authorities of a change in address. Indeed, we did not order the IJ to rescind the *in absentia* order in Santana Gonzalez, and we noted that "it is significant that petitioner failed to follow the clear requirement that she give written notice of any change in her address, a fact that needs to be considered by the IJ in making the ultimate decision. Id. at 281; see also Gomez-Palacios v. Holder, 560 F.3d 354, 360 (5th Cir. 2009) (*in absentia* removal order would not be revoked where alien failed to keep Immigration Court informed of his current mailing address); Popa v. Holder, 571 F.3d 890, 898 (9th Cir. 2009) (same).

It is important to note, though, that in Santana Gonzalez, the record disclosed that a responsible person, the alien's uncle, remained at her former address to forward her mail. 506 F.3d at 279. Unlike that alien, Ramos made no arrangements with a responsible person to forward his mail nor did he provide the postal service with a forwarding address. In addition, the alien in Santana Gonzalez endeavored to contact immigration authorities to provide updated mailing information. Ramos made no such affirmative efforts, despite being notified of his obligation to do so in both the NTA and as a condition of his release from custody.[1]

Furthermore, the alien in Santana Gonzalez at all times sought a hearing to adjust her status, a form of relief to which she was entitled under the Cuban Adjustment Act, and, consequently, she "had little to gain by failing to appear at the hearing." 506 F.3d at 280-81. We concluded that this corroborating circumstantial evidence, together with her assertion of non-receipt, might be sufficient to rebut the less

---

[1] Sembiring v. Gonzales, 499 F.3d 981, 984 (9th Cir. 2007), on which Ramos also relies, involved an alien whose address did not change, and thus is distinguishable as well.

7

stringent presumption of receipt.  <u>Id.</u> at 281.  Here, however, Ramos does not even assert that he was eligible for any form of relief from removal (except voluntary departure) prior to his marriage to Pineyro in March, 2007.  He thus would have had an incentive to avoid his removal hearing.  Accordingly, an evidentiary hearing was not called for and the Board acted within its discretion in denying his motion to reopen.

Finally, although an alien may seek reopening in order to apply for adjustment of status, the Board properly concluded that Ramos is statutorily ineligible for such relief for a period of 10 years pursuant to 8 U.S.C. § 1229a(b)(7).

For the foregoing reasons, we will deny the petition for review.