**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1737
_____

VERONICA APRIGIO CAPAZ-RODRIGUES,

Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A098-995-252)
Immigration Judge:  Annie S. Garcy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 1, 2014

Before:  SMITH, KRAUSE and BARRY, Circuit Judges

(Opinion filed:  October 2, 2014)
_____

OPINION
_____

PER CURIAM

        Veronica Aprigio Capaz-Rodrigues ("Rodrigues") petitions for review of the Board of

Immigration Appeals' determination not to rescind her final order of removal.  For the reasons

that follow, we will deny the petition for review.

Rodrigues, a native and citizen of Brazil, was arrested on May 27, 2005 by the U.S. Border Patrol after she waded across the Rio Grande, about 10 miles west of the Hidalgo, Texas Port of Entry. She gave her eventual destination as 813 Pennington Street., Elizabeth, N.J. 07292, an address that immigration authorities determined was legitimate through the U.S. Postal Service's website. On May 30, 2005, Rodrigues was charged as removable under Immigration & Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 212(a)(6)(A)(i), and personally served with a Notice to Appear for removal proceedings and a hearing to be held on July 28, 2005 in Newark, New Jersey. Due to a lack of space, she then was released on her own recognizance. Rodrigues proceeded to Richmond, Virginia, to join her husband, Wanderlei Rodrigues, who apparently had entered the United States the year before.[1]

On June 28, 2005, Immigration Court staff sent Rodrigues a new Notice of Hearing, indicating that her hearing in Newark had been moved up to July 19, 2005. The Notice was mailed to Rodrigues at the Pennington Street address in Elizabeth, N.J., but was returned to the Newark Immigration Court marked "unk[nown] at this address" and "return to sender, attempted NOT KNOWN." A.R. 599. When Rodrigues failed to appear for her hearing on July 19, 2005, she was ordered removed *in absentia* by an Immigration Judge after the agency established that she was removable as charged. In June, 2012, U.S. Immigration & Customs Enforcement ("USCIS") officers confronted Rodrigues with her *in absentia* order of removal at her home in Virginia. On April 17, 2013, Rodrigues, through counsel, filed a motion to reopen removal proceedings, with a supporting affidavit, in Newark Immigration Court pursuant to

---

[1] The couple's 2005 Form 1040 Income Tax Return listed their address as 5696 Maple Run Lane, Richmond, VA 23228. A.R. 568.

2

INA § 240(b)(5)(C)(ii), 8 U.S.C. § 1229a(b)(5)(C)(ii), and 8 C.F.R. § 1003.23(b)(4)(ii), contending that she had not in fact received notice that the date of her hearing had changed, and that, although she had signed a series of documents in Texas before immigration authorities released her, only Spanish-speaking officers spoke to her; there were no Portuguese-speaking individuals available. She argued that her due process rights were violated when the order of removal was issued *in absentia*, because she did not receive notice of the hearing, and because her obligation to keep her address current had never been explained to her in her native language. Rodrigues asserted that she gave the Pennington Street address in Elizabeth to immigration authorities because she thought she was being asked for the address of her group's destination, and she argued that she was entitled to a hearing on the disputed factual issues presented by her case pursuant to the Seventh Circuit Court of Appeal's decision in Smykiene v. Holder, 707 F.3d 785, 788 (7th Cir. 2013) (alien ordered removed *in absentia* entitled to hearing on her motion to reopen where Postal Service returned notice with notation "Attempted—Not Known," and alien provided affidavit of non-receipt).

On May 6, 2013, the Immigration Judge denied Rodrigues' motion to reopen and ruled that the July 19, 2005 order of removal would remain in effect. The IJ found that notice of the change in the hearing date was mailed to Rodrigues at the address she provided to immigration authorities before she was released on bail in May, 2005, and that it was Rodrigues' responsibility to keep the Immigration Court advised of her current address. The IJ further found that Rodrigues was not credible. Although she claimed that she was not provided with a Portuguese translation of her responsibility to keep her address current, the Administrative Record persuasively established that the proper translations had been provided to Rodrigues in

3

her native language. Rodrigues' unilateral declaration to the contrary was not sufficient to rebut what the Administrative Record plainly showed. Citing our decision in <u>Santana-Gonzalez v. Att'y Gen. of U.S.</u>, 506 F.3d 274 (3d Cir. 2007), the IJ found that Rodrigues did not present evidence that she had attempted to correspond with the Newark Immigration Court concerning her current address, or evidence that she had made arrangements for others to receive her mail at the Elizabeth, N.J. address and forward it to her in Virginia. The IJ further declined to *sua sponte* reopen proceedings, <u>see</u> <u>Matter of J-J-</u>, 21 I. & N. Dec. 976 (BIA 1997), because Rodrigues lacked credibility and because she did not indicate that she wished to apply for any form of relief. Rodrigues moved for reconsideration, reiterating that she had not received a translation in Portuguese when she was processed and charged in Texas. The IJ denied the motion on July 11, 2013, concluding that there was nothing new to consider.

Rodrigues appealed to the Board of Immigration Appeals, contending that the IJ had improperly discounted the undisputed fact that Rodrigues did not actually receive notice of the changed hearing date, again relying on the Seventh Circuit's decision in <u>Smykiene</u>, 707 F.3d 785. In <u>Smykiene</u>, Rodrigues noted, the court ordered an evidentiary hearing even though the alien had given an incomplete (and thus incorrect) address to immigration authorities, because there was no evidence that the alien had attempted to evade the notice of hearing. Rodrigues argued that the IJ's adverse credibility determination in her case was flawed because there was no hearing where the IJ could properly assess her demeanor and candor.

On February 27, 2014, the Board dismissed the appeal. The Board acknowledged that Rodrigues did not actually receive notice of her July 19, 2005 hearing, and determined that the issue thus presented was whether she understood the requirement that she provide USCIS with

4

the address where she could be contacted, and that she notify USCIS of any changes in her address or phone number as required by INA § 239(a)(1)(F), 8 U.S.C. § 1229(a)(1)(F). The Board addressed Rodrigues' contention that no one spoke Portuguese to her at the Texas detention facility, and that everyone assumed that she understood Spanish, which she did not, but agreed with the IJ that the Administrative Record unequivocally contradicted her assertion that she was not provided with a Portuguese interpreter. Specifically, the Board noted that the Notice to Appear showed that she was provided oral notice in her native Portuguese language of the time and place of her hearing which initially was scheduled for July 28, 2005, and the consequences for failing to appear; and that Form I-213 showed that all forms were served and translated into Portuguese for her, that she was advised of the requirements to provide a valid address or change of address and telephone number within 5 days of acquiring one or moving so that notification of a hearing could be mailed to her, and that she had indicated that she understood everything that was explained to her.

The Board then noted that Smykiene was not controlling in this circuit, but that, in any event, it could be distinguished on its facts. The Board reasoned that the alien in Smykiene had provided an incorrect address by mistake, but Rodrigues' contention that she gave USCIS the address where her group would eventually arrive instead of her husband's address because she was confused, was undermined by the fact that she had been provided with a Portuguese interpreter. Accordingly, the Board concluded that the IJ properly declined to rescind the *in absentia* order. The Board affirmed the IJ's order denying reconsideration because the motion contained no new arguments or evidence.

Rodrigues has timely petitioned for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). We review "the denial of a motion to reopen a removal order entered *in absentia* for abuse of discretion." Cabrera-Perez v. Gonzales, 456 F.3d 109, 115 (3d Cir. 2006) (citing Immigration & Naturalization Serv. v. Doherty, 502 U.S. 314, 323-24 (1992). "Under the abuse of discretion standard, the Board's decision is reversible only if it is 'arbitrary, irrational, or contrary to law.'" Barker v. Ashcroft, 382 F.3d 313, 316 (3d Cir. 2003) (quoting Tipu v. Immigration & Naturalization Serv., 20 F.3d 580, 582 (3d Cir. 1994).

We will deny the petition for review. An alien must be provided written notice of her removal proceedings. 8 U.S.C. § 1229(a)(1). The notice must inform her of, among other things, "[t]he time and the place at which the proceedings will be held." Id. at § 1229(a)(1)(G)(i). Written notice must be given to her in person, or, "if personal service is not practicable, through service by mail ...." Id. at § 1229(a)(1), (2)(A). In determining the consequences for failure to appear, written notice by the Attorney General is sufficient if "provided at the most recent address provided" by the alien. Id. at § 1229a(b)(5)(A); 8 C.F.R. § 1003.26(d). Although written notice is sufficient if mailed to the most recent address provided by the alien, see id. at 8 U.S.C. § 1229a(b)(5)(B); 8 C.F.R. § 1003.26(d), the statute provides that an *in absentia* removal order may be rescinded, upon a motion to reopen filed at any time, where the alien demonstrates that she did not receive notice of the hearing. 8 U.S.C. § 1229a(b)(5)(C)(ii). This is Rodrigues' contention, that she did not receive the notice because, due to language difficulties, she did not give USCIS her husband's address. In her brief, she asserts that, while detained in Texas, "immigration officers interrogated her in English and Spanish … but since she only knew some words in Spanish there was no effective

communication." See Petitioner's Brief, at 7. The documents all were written in English, and she does not recall that a Portuguese translator was provided to her. Furthermore, after being reunited with her husband, she misplaced all of the documents that she was handed during her detention. See id. at 11.

In Santana Gonzalez, 506 F.3d 274, we addressed how an alien claiming non-receipt of a notice sent by regular mail could rebut the presumption of receipt and thereby receive an evidentiary hearing on that claim. See id. at 274-75. Santana Gonzalez holds that the fact that notice was sent by regular mail to the last address provided by the alien does not necessarily establish that the alien received the notice under § 1229a(b)(5)(C)(ii), because a weaker presumption of receipt applies when the notice is sent by regular mail. We held that an alien's affidavit claiming non-receipt of a notice sent by regular mail, along with corroborating circumstantial evidence, may be sufficient to raise a factual issue requiring an evidentiary hearing before the IJ, see id. at 280. Importantly, however, we also noted, in remanding, that it was significant that the "petitioner failed to follow the clear requirement that she give written notice of any change in her address, a fact that needs to be considered by the IJ in making the ultimate decision," id. at 281. In Ramos-Olivieri v. Att'y Gen. of U.S., 624 F.3d 622, 623 (3d Cir. 2010), we held that the agency need not rescind an *in absentia* order of removal where the alien fails to keep the Immigration Court informed of his current mailing address. Non-receipt of a notice of a removal hearing does not entitle an alien to rescission if that non-receipt is the result of the alien's neglect of his obligation to keep the Immigration Court informed of his current address. See id. at 623. An alien may not seek rescission of an *in absentia* order based

on non-receipt if the non-receipt was caused by a failure to comply with the address requirement. See id.

Santana Gonzalez does not require a hearing in Rodrigues' case. No hearing is required, where, as here, there is no genuine factual dispute. The Notice to Appear informed Rodrigues that a removal order could be entered in her absence if she failed to appear. A.R. 602-03. It informed her of the requirement to provide her current address on a Form EOIR-33 whenever she moves, because notices of any hearings would be mailed to this address. See id. Form I-213 also documented Rodrigues' arrest. The Record of Deportable/Inadmissible Alien, which was signed on May 30, 2005 by both Senior Patrol Agent Oscar E. Rodriguez and Examining Officer Samuel M. Torres, specifically stated that, "All forms were served and translated in the Portuguese language by DHS [Department of Homeland Security] certified interpreter Pierre Verlaet." A.R. 595. It further contained this note: Subject was advised of the EOIR-33 requirements to provide a valid address or change of address and telephone number within 5 days of acquiring or moving so that notification of hearing or other correspondence be mailed to the address provided by you. Failure to comply with this requirement or report for your upcoming immigration hearing, which is set in Newark, N.J. may result in your deportation in absentia. Subject stated that she understood everything that was explained to her.
A.R. 596.

Rodrigues' contention in her motion to reopen that no one spoke Portuguese to her at the Texas detention facility finds no support whatever in the Administrative Record. The IJ's determination that her affidavit in support of her motion to reopen was not credible was not

improper in view of the Administrative Record. See Sewak v. Immigration & Naturalization Serv., 900 F.2d 667, 674 (3d Cir. 1990) (immigration judge has authority to determine credibility of affidavits and other material submitted with motion to rescind *in absentia* removal order). Moreover, Rodrigues has not argued that either the Notice to Appear or Form I-213 are untrustworthy, nor do they appear to be.

We agree with the Board that Smykiene is not controlling in this circuit and, in any event, can be distinguished on its facts. In Smykiene, there was nothing in the Administrative Record to undermine the alien's assertion that she gave an incomplete and incorrect address by mistake, 707 F.3d at 786. There was, for example, no Notice to Appear or Form I-213 showing that she had been advised in her native language of the requirement to provide a valid, current address. Here, in contrast, the factual record is much more complete and ultimately adequate to decide the case adversely to Rodrigues.

Accordingly, because Rodrigues was informed in Portuguese of the requirement that she provide USCIS with the address where she could be contacted, and that she notify USCIS of any changes in her address or phone number, INA § 239(a)(1)(F), 8 U.S.C. § 1229(a)(1)(F), the agency did not err in denying her motion to reopen and declining to rescind the *in absentia* removal order. Ramos-Olivieri, 624 F.3d at 623. We cannot review the IJ's determination not to *sua sponte* reopen the proceedings, as Rodrigues requests, see Petitioner's Brief, at 20-23, because she did not pursue this argument before the Board. An alien must exhaust all administrative remedies as a prerequisite to raising a claim before this Court. 8 U.S.C. § 1252(d)(1); Alleyne v. Immigration & Naturalization Serv., 879 F.2d 1177, 1182 (3d Cir. 1989). Failure to appeal at all available levels constitutes a failure to exhaust, thus depriving

us of jurisdiction, <u>see</u> <u>id.</u> at 1252(d)(1) (all administrative remedies available "as of right" must be exhausted). In any event, the agency's decision not to *sua sponte* reopen proceedings is generally unreviewable, <u>see</u> <u>Desai v. Att'y Gen. of U.S.</u>, 695 F.3d 267, 269 (3d Cir. 2012). Similarly, we decline to consider in the first instance Rodrigues' argument that she was under duress at the Texas detention center because she was exhausted, hungry, and dehydrated, even assuming that such an argument has any relevance here.

For the foregoing reasons, we will deny the petition for review.