NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3409
_____

LUCERO CRUZ-BAUTISTA
a/k/a Guadalupe Lucas-Bautista,

Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,

Respondent

_____

On Petition for Review of a Decision
and Order of the Board of Immigration Appeals
(BIA No. A200-689-718)
Annie S. Garcy, Immigration Judge

_____

Submitted under Third Circuit LAR 34.1(a)
March 27, 2015

BEFORE:  GREENAWAY, JR., KRAUSE, and GREENBERG, Circuit Judges

(Filed: April 17, 2015)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
  does not constitute binding precedent.

GREENBERG, Circuit Judge.

## I.  INTRODUCTION

This case comes on under the Immigration and Nationality Act ("INA") on Guadalupe Lucas-Bautista's petition for review of a decision and order of the Board of Immigration Appeals ("BIA") of July 11, 2014, which affirmed the denial by an immigration judge ("IJ") on January 16, 2013, of her untimely motion to reopen removal proceedings and rescind an in absentia order of removal entered against her when she did not appear at a removal hearing.[1]  Lucas-Bautista attributes her failure to appear at the removal hearing to the ineffective assistance of paralegal Ramon Hernandez, an employee of attorney Elaine Cheung, whom she alleges advised her that as an alternative to attending the hearing and seeking voluntary departure, she could attempt to remain in the United States by skipping the hearing and hiding from immigration authorities. Because we agree with the BIA and the IJ that Lucas-Bautista freely elected not to attend the hearing with knowledge of the potential ramifications of that election, we will deny her petition for review.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Lucas-Bautista is a native and citizen of Mexico.  She entered the United States without inspection or admission some time prior to March 2010, but immigration authorities apprehended her in July 2010 following her arrest on criminal charges.  The Department of Homeland Security ("DHS") initiated removal proceedings against her

---

[1] Lucas-Bautista previously used a false name of Lucero Cruz-Bautista.

2

under 8 U.S.C. § 1182(a)(6)(A)(i) as she was an alien present in the United States without being admitted or paroled. Lucas-Bautista received a written notice to appear at a hearing before an IJ, which warned that if she failed to attend the hearing, the IJ could enter a removal order in her absence and DHS could arrest or detain her. She also received oral notice in Spanish of the consequences of failing to appear.

Lucas-Bautista attended her hearing on September 28, 2010, but the proceedings were continued until January 21, 2011, to afford her an opportunity to obtain counsel. Notice of the consequences of failing to appear, both written and oral, was given again to Lucas-Bautista, including notice that if she failed to appear an IJ might issue an in absentia removal order against her. But Lucas-Bautista claimed to feel ill on January 21, and consequently her hearing was rescheduled for March 29, 2011. She received written notice of the new hearing date, advising her once again of the consequences of failing to appear.

Nevertheless, Lucas-Bautista did not attend the March 29 hearing, and the IJ issued an in absentia removal order. In September 2011, Immigration and Customs Enforcement ("ICE"), an office within DHS, arrested Lucas-Bautista and placed her under an order of supervision.

More than a year later, on October 22, 2012, Lucas-Bautista filed an untimely motion to reopen her removal proceedings with the goal of having the in absentia removal order entered against her rescinded. She claimed that her failure to appear at the March 29, 2011 hearing was the result of the ineffective assistance of counsel that Hernandez had given her. In making this claim she complied with the procedural

3

requirements for advancing an ineffective assistance of counsel claim established in In re

Lozada, 19 I. & N. Dec. 637 (B.I.A. 1988).[2]

Lucas-Bautista's affidavit, attached to her motion, contained the following

allegations. After being detained by DHS in the summer of 2010, she began to receive

legal assistance from Ramon Hernandez, a paralegal working for immigration attorney

Elaine Cheung. Although Hernandez informed Lucas-Bautista that he was not an

attorney, he conducted himself in the manner of one, and Lucas-Bautista came to trust

and heavily rely on him.

In the months leading up to the March 29, 2011 hearing, Hernandez repeatedly

advised Lucas-Bautista to attend the hearing before the IJ and seek voluntary departure so

that she could regain the $5,000 bond she had paid to DHS. For example, according to

the affidavit, approximately a week before the March 29 hearing, Hernandez told Lucas-

Bautista: "You should just take voluntary departure . . . . That way, you will get your

money back. You don't want to lose your money, right? Just go to court." A.R. at 429.

Lucas-Bautista, however, did not want to leave the United States, she became a "nervous

wreck" after she witnessed a friend forced to depart, and she feared the same outcome

befalling her. Id. at 427.

---

[2] Those procedural requirements are that the party asserting ineffective assistance must:
(1) provide an affidavit attesting to the relevant facts; (2) inform former counsel of the
allegations and allow him or her an opportunity to respond; and (3) if former counsel's
handling of the case involved a violation of ethical or legal responsibilities, either
disclose whether she has filed a complaint with the appropriate disciplinary authorities or
explain why she has not done so. See Lozada, 19 I. & N. Dec. at 639.

Eventually, in response to Lucas-Bautista's insistence that she did not want to go to court and be compelled to leave the United States, Hernandez proposed as an alternative that she "opt not [to] go to court, lose the $5,000 and then just lay low until immigration would get tired of looking for [her]." Id. at 434. In furtherance of this goal, Hernandez suggested that Lucas-Bautista move to a different state. After considering this option for a few days, Lucas-Bautista told Hernandez that she could not move out of state because that move would require interrupting her daughter's education in the middle of the school year. Accordingly, Hernandez suggested that Lucas-Bautista move to a different address and provide his office address to DHS as her new mailing address so that he could stay apprised of her case while she hid. Hernandez told Lucas-Bautista that if she successfully evaded immigration authorities, her life eventually would return to the way it had been before the removal process had begun, "at least in practical terms." Id.

Lucas-Bautista opted to follow this alternative suggestion. Therefore, she moved to a different apartment, though within the same rental complex in which she had been living, and she did not attend the March 29 hearing. Lucas-Bautista explains that her thoughts during this period were that "after a while, I would be able to live a normal life again. Not totally normal, obviously, given the deportation order, but that I would be able to continue to work to pay off my significant debts, and do the best to support myself and my daughter." Id. at 432. On September 18, 2011, however, ICE surprised Lucas-Bautista by appearing at her new apartment and arresting her. After her arrest, Lucas-Bautista continued to trust and rely on Hernandez until late in the summer of 2012, when he began to threaten her for failing to pay outstanding fees. Around that time, Lucas-

5

Bautista obtained new counsel. Lucas-Bautista asserts that all of the legal assistance that Hernandez provided to her, including his advice regarding her attendance at the March 29 hearing, was under attorney Cheung's guidance and supervision.

After Cheung and Hernandez submitted affidavits and other documents in response to Lucas-Bautista's affidavit, she filed an additional affidavit reaffirming her allegations. On January 16, 2013, the IJ denied Lucas-Bautista's motion to reopen, both on the merits and because she had not demonstrated grounds for equitably tolling the statutory deadline for filing her untimely motion. In addressing the merits, the IJ relied on the allegations in Lucas-Bautista's initial affidavit to conclude that she knew the consequences of not attending her removal hearing and "made a strategic and knowing choice to evade her immigration hearing and the immigration authorities." App. at 9.

Lucas-Bautista appealed, but the BIA affirmed. It noted that, contrary to a statement in the IJ's opinion, Lucas-Bautista's affidavit did provide evidence that she received advice to skip the hearing, but the BIA emphasized that the affidavit presented this possibility as just one of the options Hernandez suggested. It agreed with the IJ that Lucas-Bautista's affidavit manifested her awareness of the consequences of not attending the hearing and therefore that her decision not to attend was a "strategic and knowing choice" that was not the result of ineffective assistance of counsel. Id. at 4 (internal quotation marks omitted). Having rejected Lucas-Bautista's claim on the merits, the BIA declined to address her argument for equitably tolling the filing deadline. Lucas-Bautista now petitions for review of the BIA's decision and order.

6

## III. STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

The BIA had jurisdiction pursuant to 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. We have jurisdiction pursuant to 8 U.S.C. § 1252. We review the BIA's decision and order and consider the decision of the IJ only to the extent that the BIA deferred to or adopted its analysis. See Cadapan v. Att'y Gen., 749 F.3d 157, 159 (3d Cir. 2014). "We review the denial of a motion to reopen a removal order entered in absentia for abuse of discretion," so that we reverse only if the BIA's decision was "arbitrary, irrational, or contrary to law." Ramos-Olivieri v. Att'y Gen., 624 F.3d 622, 625 (3d Cir. 2010) (citations omitted). We exercise de novo review of questions of law, including the underlying question of whether a petitioner's due process right to the effective assistance of counsel has been violated. See Contreras v. Att'y Gen., 665 F.3d 578, 583 (3d Cir. 2012); Fadiga v. Att'y Gen., 488 F.3d 142, 153-54 (3d Cir. 2007). Finally, we review factual findings for substantial evidence and uphold them unless the evidence compels that we make a contrary finding. See 8 U.S.C. § 1252(b)(4)(B); Li Hua Yuan v. Att'y Gen., 642 F.3d 420, 425 (3d Cir. 2011).

## IV. DISCUSSION

If an alien with written notice of a removal hearing fails to attend the hearing, she "shall be ordered removed in absentia if the [Bureau of Citizenship and Immigration Services within the DHS] establishes by clear, unequivocal, and convincing evidence that

7

the written notice was so provided and that the alien is removable."[3]  8 U.S.C. § 1229a(b)(5)(A).  Where, as here, the alien was not in government custody at the time of the hearing and does not deny receiving notice of the hearing, she may have an <u>in absentia</u> order rescinded only if she files a timely motion to reopen demonstrating "that the failure to appear was because of exceptional circumstances."  8 U.S.C. § 1229a(b)(5)(C).  Although Lucas-Bautista did not file her motion within the 180 days allowed for moving to reopen an order in an <u>in absentia</u> case, the BIA did not address this issue and so neither will we.  See <u>Orabi v. Att'y Gen.</u>, 738 F.3d 535, 539 (3d Cir. 2014) (noting that we may not affirm the BIA's judgment on a ground on which it did not rely). We therefore focus solely on Lucas-Bautista's argument that she can demonstrate "exceptional circumstances," in the form of ineffective assistance of counsel, for her failure to attend the removal hearing.[4]

The INA defines "exceptional circumstances" as those "beyond the control of the alien," "such as battery or extreme cruelty to the alien or any child or parent of the alien,

---

[3] The INS is now known as the Bureau of Citizenship and Immigration Services, and operates within DHS.  <u>Borges v. Gonzales</u>, 402 F.3d 398, 401 n.1 (3d Cir. 2005).

[4] Lucas-Bautista also asserts that the proceedings should be reopened because the IJ did not supply her with a list of free legal service providers.  See <u>Leslie v. Att'y Gen.</u>, 611 F.3d 171, 180-82 (3d Cir. 2010).  We will not address this issue, however, as Lucas-Bautista did not advance it before the IJ or the BIA.  See <u>Cadapan</u>, 749 F.3d at 158-59; <u>Castro v. Att'y Gen.</u>, 671 F.3d 356, 365 (3d Cir. 2012).  Furthermore, Lucas-Bautista waived the issue in this Court by raising it only in a footnote to the facts section of her opening brief and developing it only in her reply brief.  See <u>Garcia v. Att'y Gen.</u>, 665 F.3d 496, 502 (3d Cir. 2011) ("'When an issue is either not set forth in the statement of issues presented or not pursued in the argument section of the [opening] brief, the appellant has abandoned and waived that issue on appeal.'" (quoting <u>Nagle v. Alspach</u>, 8 F.3d 141, 143 (3d Cir. 1993))).

serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances." 8 U.S.C. § 1229a(e)(1). Although ineffective assistance of counsel does not involve violence, it can satisfy the exceptional circumstances test. See Borges v. Gonzales, 402 F.3d 398, 408 (3d Cir. 2005) (suggesting that we should join other circuits in holding that ineffective assistance constitutes "exceptional circumstances," but ultimately not deciding the question). Furthermore, the deficient performance of an attorney's agent or paralegal can qualify as ineffective assistance of counsel imputed to the attorney. See Fadiga, 488 F.3d at 162; Borges, 402 F.3d at 401, 408; Aris v. Mukasey, 517 F.3d 595, 596 (2d Cir. 2008); Monjaraz-Munoz v. I.N.S., 327 F.3d 892, 897 (9th Cir.), opinion amended on denial of reh'g, 339 F.3d 1012 (9th Cir. 2003). However, in keeping with the requirement that the exceptional circumstances be "beyond the control of the alien," courts have limited this ground for rescinding an in absentia removal order to situations where either faulty advice by counsel or counsel's agent rendered the alien physically unable to attend the hearing, see Monjaraz-Munoz, 327 F.3d at 895, 897, or counsel or counsel's agent made false statements concerning the time or place of the hearing, the obligation to attend, or the consequences of attending or failing to attend, see, e.g., Aris, 517 F.3d at 596, 599; Galvez-Vergara v. Gonzales, 484 F.3d 798, 800-02 (5th Cir. 2007); Borges, 402 F.3d at 401, 408 & n.12.

Lucas-Bautista argues that Hernandez and, by extension Cheung, provided ineffective assistance in proposing that she skip her removal hearing and hide from immigration authorities. Lucas-Bautista's own evidence, however, demonstrates that

9

Hernandez pointed out that she had a choice between attending the hearing and not doing so, and that she knowingly selected the latter option. By Lucas-Bautista's own account, Hernandez repeatedly advised her to attend the removal hearing and seek voluntary departure. Hernandez suggested as an alternative that she go into hiding only when Lucas-Bautista insisted that she could not leave the country. Though Hernandez may have acted improperly in suggesting that she might skip the hearing and in offering to assist Lucas-Bautista in illegally remaining in this country, he did not misrepresent the legal consequences of pursuing this course of action; indeed, Hernandez presented it as a "practical" rather than a legal alternative. A.R. at 434.

According to Lucas-Bautista's initial affidavit, she understood that if she selected this alternative, "the deportation order" against her would prevent her life from ever returning entirely to normal and that, for at least some period of time, immigration authorities would be "looking for [her]." Id. at 432, 434. The affidavit therefore demonstrates Lucas-Bautista's awareness that the consequence of not attending the hearing would be the entry of an in absentia removal order and that immigration authorities would attempt to locate her to effectuate this order. Though Lucas-Bautista portrays Hernandez as having control over her, this contention is belied by the evidence that she resisted his suggestions when she did not agree with them: for example, she rejected his advice to attend the hearing and seek voluntary departure due to her fear of leaving the country, and she turned down his proposal to move to a different state because she did not want to interrupt her daughter's education. Accordingly, we agree with the IJ and the BIA that Lucas-Bautista's decision to skip the removal hearing

10

constituted a "strategic and knowing choice." App. at 4, 9; cf. Ramos-Olivieri v. Att'y Gen., 624 F.3d 622, 626 (3d Cir. 2010) (noting that alien facing only removal or voluntary departure has incentive to avoid removal hearing).

We also are satisfied that the circumstance under which immigration authorities ultimately arrested Lucas-Bautista does not convert the consequence of her decision not to attend the hearing -- rather than follow the first course of action recommended by Hernandez to attend and seek voluntary departure -- into an exceptional circumstance beyond her control. In this regard, we point out that Georcely v. Ashcroft, 375 F.3d 45, 50 (1st Cir. 2004), emphasized that "[t]he exceptional circumstances requirement, a fairly tough one, was adopted by Congress precisely because failures to appear at scheduled INS hearings had greatly burdened the agency," and rejected the alien's attempt in that case to set aside an in absentia removal order based on ineffective assistance of counsel because the alien should have understood his legal obligation to appear at the hearing. The same is true here with respect to Lucas-Bautista's ability to understand the consequence of not attending the hearing.

Lucas-Bautista challenges the IJ's consideration of and reliance on Cheung's and Hernandez's submissions, which she contends contain unreliable hearsay and information disclosed in violation of ethical confidentiality rules. However, the IJ relied on these submissions only in the background sections of her opinion; as the BIA pointed out, in actually deciding not to reopen the proceedings, the IJ based her decision "on [Lucas-Bautista's] version of events, as set forth in [her] initial affidavit." App. at 3. More importantly, in affirming this decision, the BIA explicitly "accepted as true" the

11

allegations in Lucas-Bautista's affidavit and "consider[ed] the facts in a light most favorable to [her]." Id. at 4. Doing likewise, we have concluded that the BIA did not abuse its discretion in refusing to reopen the proceeding and rescind the in absentia removal order. We therefore will not address the propriety of Cheung's and Hernandez's submissions or the immaterial factual findings that the IJ made in reliance on them. See 8 U.S.C. § 1229a(b)(5)(D) (limiting judicial review of in absentia removal orders to "(i) the validity of the notice provided to the alien, (ii) the reasons for the alien's not attending the proceeding, and (iii) whether or not the alien is removable"); Calla-Collado v. Att'y Gen., 663 F.3d 680, 683 n.4 (3d Cir. 2011) (per curiam) (declining to review aspect of BIA's decision that did not bear on case's outcome).

## V. CONCLUSION

For the foregoing reasons, we will deny Lucas-Bautista's petition for review of the BIA decision and order of July 11, 2014.

12