17-627
Phelps v. Bosco

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 14th day of February, two thousand eighteen.

Present:     ROSEMARY S. POOLER
             ROBERT D. SACK,
                         *Circuit Judges.*
             PAUL A. ENGELMAYER,[1]
                         *District Judge.*

_____

FREDERICK H. PHELPS

                         *Plaintiff-Appellant*,

                    v.                                    17-627

MAUREEN BOSCO, EXECUTIVE DIRECTOR OF THE
CENTRAL NEW YORK PSYCHIATRIC CENTER;
MARGARET C. DRAKE, ASSISTANT COUNSEL, NEW
YORK STATE OFFICE OF MENTAL HEALTH; NEW YORK
STATE DIVISION OF CRIMINAL JUSTICE SERVICES;
FEDERAL BUREAU OF INVESTIGATION CRIMINAL
JUSTICE INFORMATION SERVICES; NATIONAL INSTANT
BACKGROUND CHECK SYSTEM; UNITED STATES
DEPARTMENT OF JUSTICE; JEFFERSON B. SESSIONS, III,
ATTORNEY GENERAL OF THE UNITED STATES OF
AMERICA; AND CHRISTOPHER WRAY, JR., THE

---

[1] Judge Paul A. Engelmayer, United States District Court for the Southern District of New York, sitting by designation.

DIRECTOR OF THE FEDERAL BUREAU OF
INVESTIGATION

*Defendants-Appellees.*[1]

_____

Appearing for Appellant:     Lewis B. Oliver, Jr., Albany, N.Y.

Appearing for Appellees:     Jonathan D. Hitsous, Assistant Solicitor General (Barbara D.
Underwood, Solicitor General, Andrea Oser, Deputy Solicitor
General, *on the brief*) *for* Eric T. Schneiderman, Attorney General
of the State of New York, Albany, N.Y. *for State Defendants-
Appellees*.

Abby C. Wright, Attorney, Appellate Staff, Civil Division, United
States Department of Justice (Chad A. Readler, Acting Assistant
Attorney General, Grant C. Jaquith, Acting United States Attorney,
Michael S. Raab, Attorney, Appellate Staff *on the brief*),
Washington, D.C. *for Federal Defendants-Appellees*.

Appeal from the United States District Court for the Northern District of New York (Suddaby,
*J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,
AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Appellant Frederick H. Phelps appeals from a February 1, 2017 judgment of the District
Court for the Northern District of New York (Suddaby, *J.*) granting summary judgment to all
defendants on the grounds that Phelps was properly denied access to a firearm becaue he had
been "committed to [a] mental institution" under 18 U.S.C. § 922(d)(4), (g)(4). *Phelps v. Bosco*,
No. 13-cv-1510, 2017 WL 437407 (N.D.N.Y. Feb. 1, 2017). We assume the parties' familiarity
with the underlying facts, procedural history, and specification of issues for review.

We review grants of summary judgment de novo, viewing all disputed facts in the light
most favorable to the non-moving party. *See Amore v. Novarro*, 624 F.3d 522, 529 (2d Cir.
2010).

The Gun Control Act of 1968 created a number of provisions designed "to deny access to
guns and ammunition to…defined special risk groups." Franklin E. Zimring, *Firearms and
Federal Law: The Gun Control Act of 1968*, 4 J. Legal Stud. 133, 152 (1975). Among those
"special risk groups" who are not allowed to buy guns and to whom dealers are not allowed sell
guns are those who "ha[ve] been committed to any mental institution." 18 U.S.C. § 922(d)(4)
(prohibition on distribution); 922(g)(4) (prohibition on receiving/buying). In 2013, Phelps
attempted to, but was prohibited from, buying a gun based on these provisions of federal law.
This denial occurred because of the Federal Bureau of Investigation's record of an involuntary

---

[1] The Clerk of Court is instructed to amend the caption as above.

hospitalization that took place in 1996 under Section 9.37 of the New York Mental Health Law ("NYMHL"), which the New York Office of Mental Health ("NYOMH") had reported. However, over the course of litigation it came to light that Phelps had also been involuntarily hospitalized in 2005 under Section 9.39 of the NYMHL. Since the district court found that this latter hospitalization provides an independent and less ambiguous ground to deny Phelps firearms, its opinion and the arguments in front of us focus mainly on the implications of this latter hospitalization. *See Phelps*, 2017 WL 437407 at \*27-29. Because we agree with the district court and because Phelps has waived any arguments about the 1996 hospitalization by failing to raise them in his opening brief, *see JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief."), we narrow our focus in the same way.

In *United States v. Waters*, 23 F.3d 29 (2d Cir. 1994), *cert. denied*, 513 U.S. 867 (1994), we addressed the NYMHL's relevance to the federal gun control regime. There, we determined that we should first "seek guidance from state law" and then, "[o]nce state law has addressed the general question, [we] must then consider if the outcome is consistent with federal policy." *Id.* at 31. Although that decision dealt with involuntary hospitalization under Section 9.27 and we deal with Section 9.39 here, *Waters* provides all the guidance we need.

Like Section 9.27, Section 9.39 creates a procedure to admit an individual into a hospital against her will when her mental illness presents a serious danger to herself or others. *Compare id.* at 35 (finding that Section 9.27 "permits only the involuntary confinement of dangerous individuals who cannot survive in the community," which is exactly the sort of individual the federal gun control laws were "designed to prevent" from obtaining firearms) *with Rodriguez v. City of New York*, 72 F.3d 1051, 1062 (2d Cir. 1995)) ("Section 9.39 requires not only that the individual be 'alleged to have a mental illness for which immediate observation, care, and treatment in a hospital is appropriate,' but also, consistent with substantive due process, that the patient's alleged mental illness be 'likely to result in serious harm to himself or others.'" (quoting NYMHL § 9.39(a)). Individuals hospitalized under either provision, or their representatives, have a right to seek judicial review of that determination. *See* N.Y.M.H.L. § 9.31(a) (providing this right for Section 9.27 confinements); N.Y.M.H.L. § 9.39(a) (providing this right for Section 9.39 confinements). And, as in *Waters*, Phelps's 2005 admission was based on the recommendation of at least two physicians, at least one of whom was a psychiatrist, and included treatment during the course of his stay. *See Waters*, 23 F.3d at 32; *Phelps*, 2017 WL 437407 at \*27-28. That is exactly the sort of determination that a federal statute should include in its definition of "commitment" insofar as it is concerned with preventing firearms from getting into the hands of those whose mental illness might lead them to commit acts of violence. And it is the sort of process that ensures the determination is not arbitrary.

As well, like Section 9.27, Section 9.39 is understood as a "commitment" by New York courts. *See*, *e.g.*, *Matter of George L.*, 85 N.Y.2d 295, 305 n.3 (1995) (referring to Section 9.39 as "an involuntary civil commitment"). Following their lead, we have consistently understood Section 9.39 in the same way. *See Rodriguez*, 72 F.3d at 1061-63; *Olivier v. Robert L. Yeager Mental Health Center*, 398 F.3d 183, 188-89 (2d Cir. 2005); *Goetz v. Crosson*, 967 F.2d 29, 32 (2d Cir. 1992); *Project Release v. Prevost*, 722 F.2d 960, 970-71 (2d Cir. 1983).

Phelps did not raise a constitutional challenge to the state's conduct on appeal. Such a challenge would present complex issues, whether under the Second Amendment or the Due Process Clause. *See*, *e.g.*, *Tyler v. Hillsdale County Sheriff's Department*, 837 F.3d 678 (6th Cir. 2016) (an *en banc* decision considering an as-applied challenge to Section 922(g)(4) in which eight separate opinions were filed). We therefore do not consider whether the state violated any of his constitutional rights when it reported his hospitalizations to the FBI or whether concern for these constitutional rights might change our interpretation of the word "commitment" under New York's scheme. *Cf. United States v. Rehlander*, 666 F.3d 45 (1st Cir. 2012) (determining that recent developments in Second Amendment law should affect the treatment, under federal law, of a "commitment" under Maine law).

We have considered the remainder of Phelps's arguments and find them to be without merit. Accordingly, the order of the district court hereby is AFFIRMED. Each side to bear its own costs.

                                        FOR THE COURT:
                                        Catherine O'Hagan Wolfe, Clerk

4