**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1416
_____

VICTOR OCTAVIO CASTILLO,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(No. A075-798-551)
Immigration Judge: Ramin Rastegar
_____

Submitted under Third Circuit L.A.R. 34.1(a)
November 13, 2020

(Filed: November 24, 2020)

Before:  HARDIMAN, SCIRICA and RENDELL, *Circuit Judges*.

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**RENDELL**, *Circuit Judge*.

Victor Castillo seeks review of a decision by the Board of Immigration Appeals ("BIA") affirming the denial of his motion to reopen an *in absentia* removal order. For the reasons set forth below, the petition will be denied in part and dismissed in part.

## I.

## A.

Castillo, a native and citizen of Ecuador, entered the United States without inspection in September 1995. On December 4, 1997, he was arrested by the Immigration and Naturalization Service ("INS") and personally served with a Notice to Appear ("NTA") charging him with removability under the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i). The NTA stated that Castillo's hearing was to take place at the Office of the Immigration Judge in Elizabeth, New Jersey at a "Date and Time to be set" and that Castillo "was provided oral notice in the Spanish language of the time and place of his . . . hearing and of consequences of failure to appear." R. 123–24. The NTA directed Castillo to "notify the Immigration Court immediately" if he changed his address or phone number during the pendency of his removal proceedings. R. 124. Castillo's signature appears on the final page of the NTA.

Upon his release from custody on December 8, 1997, Castillo informed INS that he would be residing at an address in Ossining, New York. A Notice of Hearing dated January 8, 1998 was sent by regular mail to the Ossining address. Castillo failed to appear for the hearing on March 19, 1998 and, as a result, the IJ issued an *in absentia* order directing his removal.

2

B.

Castillo remained in the United States. On January 16, 2018, approximately twenty years after his removal hearing, Castillo filed a motion to reopen his *in absentia* removal order. In that motion, Castillo claimed he had not been notified in Spanish, his native language, of the date or time of his removal hearing. He admitted in his affidavit, however, that "[t]he agent who bonded [him] out gave [him] papers in English" approximately one month after his release from detention, though the documents were not translated for him. R. 51. Castillo further stated that he only learned of the *in absentia* removal order in August of 2015, when he began the process of preparing a Form I-485, Application to Register Permanent Residence or Adjust Status, with the assistance of counsel. Castillo began this process after his wife, a U.S. citizen whom he married in 2013, had successfully filed a Form I-130, Petition for Alien Relative, on his behalf.

By order dated April 18, 2018, the IJ denied Castillo's motion, concluding that he failed to overcome the presumption of receipt that attaches when notice is sent by regular mail to an alien's last known address. In addition, the IJ determined that Castillo "ha[d] not shown due diligence in investigating his case" and that there were no exceptional circumstances to merit *sua sponte* reopening his *in absentia* removal order. R. 35.

Castillo appealed to the BIA, advancing similar arguments that he did not receive proper notice of his removal proceedings and that his case presents exceptional circumstances. As evidence of exceptional circumstances, Castillo pointed to his approved Form I-130 and the fact that he has resided in the United States for over twenty

3

years, is married to a U.S. citizen with "urgent psychological needs" who depends on him for care, and has no criminal record in the United States besides his initial immigration detention.  R. 10.  By order dated January 29, 2020, the BIA dismissed the appeal, largely on the same grounds cited in the IJ's decision.  Castillo now petitions for review.

## II.

The BIA exercised jurisdiction pursuant to 8 C.F.R. § 1003.1(b)(3).  We have jurisdiction pursuant to 8 U.S.C. § 1252.

In immigration cases, we review the BIA's decision and those parts of the IJ's opinion adopted by the BIA.  Hernandez-Morales v. Att'y Gen., 977 F.3d 247, 249 (3d Cir. 2020).  We review the denial of a motion to reopen an *in absentia* removal order for abuse of discretion.  Ramos-Olivieri v. Att'y Gen., 624 F.3d 622, 625 (3d Cir. 2010).  Under that standard, we "may reverse only if the denial is arbitrary, irrational, or contrary to law."  Contreras v. Att'y Gen., 665 F.3d 578, 583 (3d Cir. 2012).  We review the BIA's legal conclusions *de novo* and its factual determinations for substantial evidence.  Borges v. Gonzales, 402 F.3d 398, 404 (3d Cir. 2005).

## III.

Castillo advances three arguments in his petition for review: that (1) the BIA erred in determining that he received proper notice of his removal hearing; (2) the BIA erred by declining to reopen his case *sua sponte*; and (3) the BIA's decision violated his constitutional due process rights.  These arguments are unavailing.

4

A.

Under the Immigration and Nationality Act, an alien must receive written notice before the initiation of removal proceedings. 8 U.S.C. § 1229(a)(1). Such written notice must be made in person or, "if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any." Id. An alien who receives proper notice and fails to appear may be ordered removed *in absentia* by the IJ. 8 U.S.C. § 1229a(b)(5)(A). An *in absentia* removal order may be rescinded upon a motion to reopen if the alien demonstrates that he "did not receive notice" of his removal hearing. 8 U.S.C. § 1229a(b)(5)(C)(ii); 8 C.F.R. § 1003.23(b)(4)(ii). Thus, when considering a motion to reopen based on lack of notice, the "key question . . . is not whether the Immigration Court properly mailed the notice to the alien, but whether the alien actually *received* the notice." Santana Gonzalez v. Att'y Gen., 506 F.3d 274, 277 (3d Cir. 2007).

Courts recognize a strong presumption of receipt when notice is sent by certified mail to an alien's last known address. Id. at 277–79. However, that presumption is weaker when notice is sent by non-certified mail, as it was in this case. Id. at 279. The "test for whether an alien has produced sufficient evidence to overcome the presumption of effective service by regular mail is practical and commonsensical rather than rigidly formulaic." Id. at 280 (quoting Sembiring v. Gonzales, 499 F.3d 981, 988 (9th Cir. 2007)). Various factors and forms of evidence may be considered. These include the petitioner's affidavit, affidavits from family members or others knowledgeable about whether notice was received, whether the petitioner exercised due diligence after learning of the *in absentia* removal order, and "any other circumstances or evidence indicating

5

possible nonreceipt of notice." See Matter of M-R-A-, 24 I. & N. Dec. 665, 674 (BIA 2008).

With these factors in mind, we conclude that substantial evidence supports the BIA's finding that Castillo received proper notice. Castillo has not adduced any evidence that he failed to receive written notice of the hearing.[1] As the BIA and IJ noted, Castillo was given oral notice in his native language regarding the consequences of failing to appear for any scheduled hearings. Shortly thereafter, the Notice of Hearing was sent to the most recent address that Castillo provided to INS, as required by the Immigration and Nationality Act, 8 U.S.C. § 1229(a). Significantly, the Notice was not returned as undeliverable to the Immigration Court. Further, despite his averments of non-receipt, Castillo did not file his motion to reopen until approximately three years after learning of his *in absentia* removal order. This unexplained delay and apparent lack of due diligence undermine Castillo's claim in his brief that he did not receive the Notice of Hearing. In light of this evidence, Castillo's bare denial of receipt[2] is insufficient to rebut the

_____

[1] In fact, Castillo's statement in his affidavit that "[t]he agent . . . gave me papers in English about one month after I was released" on December 8, 1997 seems to suggest that the Notice of Hearing, dated January 8, 1998, was received. R. 51.

[2] Castillo also argues that the BIA abused its discretion by failing to hold an evidentiary hearing on the question whether he received the Notice of Hearing. However, Castillo failed to request an evidentiary hearing before the IJ or argue that he was entitled to one before the BIA. As such, that claim is unexhausted, and we are without jurisdiction to entertain it. See 8 U.S.C. § 1252(d)(1) (requiring exhaustion of administrative remedies); Bonhometre v. Gonzales, 414 F.3d 442, 447 (3d Cir. 2005) ("To exhaust a claim before the agency, an applicant must first raise the issue before the BIA or IJ, so as to give it 'the opportunity to resolve a controversy or correct its own errors before judicial intervention.'") (internal citation omitted) (quoting Zara v. Ashcroft, 383 F.3d 927, 931 (9th Cir. 2004)). Even setting aside the exhaustion issue, see Joseph v. Att'y Gen., 465 F.3d 123, 126 (3d Cir. 2006) (recognizing the Third Circuit's "liberal exhaustion

6

presumption under <u>Santana Gonzalez</u>, 506 F.3d 274.[3]  <u>See, e.g.</u>, <u>Ramos-Olivieri</u>, 624 F.3d at 626.  Accordingly, we will not disturb the BIA's denial of Castillo's motion to reopen.

B.

Castillo urges that the BIA erred by refusing to reopen his removal order *sua sponte*.  <u>See</u> 8 C.F.R. § 1003.2(a).  This argument is without merit.  While the BIA may reopen a case *sua sponte* in "exceptional situations," <u>In re J-J-</u>, 21 I. & N. Dec. 976, 984 (BIA 1997), it retains "unfettered discretion" to decline to invoke its *sua sponte* authority, <u>Calle-Vujiles v. Ashcroft</u>, 320 F.3d 472, 475 (3d Cir. 2003).  Thus, as a general matter, a BIA decision refusing to reopen a case *sua sponte* is "functionally unreviewable," leaving us without appellate jurisdiction.  <u>Sang Goo Park v. Att'y Gen.</u>, 846 F.3d 645, 651 (3d Cir. 2017).  However, if the BIA's decision not to reopen removal proceedings *sua sponte* is based on an "incorrect legal premise," we may remand to the BIA "so it may exercise its authority against the correct 'legal background.'"  <u>Pllumi v. Att'y Gen.</u>, 642 F.3d 155, 160 (3d Cir. 2011) (quoting <u>Mahmood v. Holder</u>, 570 F.3d 466, 469 (2d Cir. 2009)).

---

policy"), the failure to conduct an evidentiary hearing in this case was not an abuse of discretion due to the lack of any corroborating circumstantial evidence of non-receipt. <u>See</u> <u>Santana Gonzalez</u>, 506 F.3d at 280.

[3] To the extent Castillo asserts that any notice he did receive was insufficient because he was only informed of the date and time of his hearing in English, that argument also fails. 8 U.S.C. § 1229 does not require notice to be provided in any language other than English.  <u>See, e.g.</u>, <u>Flores-Chavez v. Ashcroft</u>, 362 F.3d 1150, 1155 n.4 (9th Cir. 2004) ("Current law does not require that the Notice to Appear . . . be in any language other than English.").

7

Invoking this limited exception to the rule against appellate review, Castillo asserts that the BIA committed legal error by concluding that his approved Form I-130 did not render him eligible for status adjustment and thus did not merit *sua sponte* relief. [4] That determination was not legal error. As the IJ and BIA concluded, Castillo—despite approval of his Form I-130—is not eligible for status adjustment because his initial entry into the United States was unlawful. See 8 C.F.R. § 1245.1(b)(3) (providing that "[a]ny alien who was not admitted or paroled following inspection by an immigration officer" is "ineligible to apply for adjustment of status to that of a lawful permanent resident alien"). Absent the BIA's reliance on an incorrect legal premise, we are without jurisdiction to review the BIA's refusal to reopen Castillo's removal order *sua sponte* and will therefore dismiss that part of his petition.

## C.

Castillo contends that the BIA's refusal to reopen his removal proceedings *sua sponte* also violated his due process rights under the Fifth Amendment of the United States Constitution. At its core, constitutional due process requires notice and a meaningful opportunity to be heard. See Mathews v. Eldridge, 424 U.S. 319, 333, 348 (1976). Vaguely asserting his right to procedural and substantive due process, Castillo argues that he never had a "full and fair opportunity to present the merits of an

---

[4] In addition, Castillo generally suggests that the BIA abused its discretion by concluding that the other circumstances of his case—including his wife's psychological condition and his extended residence in the United States—were not exceptional and warranting *sua sponte* reopening. However, such a conclusion by the BIA does not implicate an incorrect legal premise that would establish this Court's jurisdiction under Pllumi, 642 F.3d 155.

application for relief" and that the "BIA violated the Due Process Clause by failing to consider all of the relevant circumstances" of his case. Pet'r's Br. 19–20.

This due process argument fails on two grounds. First, to the extent Castillo asserts a procedural error in the IJ proceedings, that claim is unexhausted. While constitutional claims are not generally subject to the exhaustion requirement, the requirement still applies to claims of procedural error that, despite being presented "in the language of procedural due process," could have been raised before the BIA. See Bonhometre v. Gonzales, 414 F.3d 442, 448 (3d Cir. 2005) (holding that the petitioner's "procedural due process claims . . . could have been argued before the BIA, and his failure to do so is thus fatal to our jurisdiction over this petition"); Marrero v. I.N.S., 990 F.2d 772, 778 (3d Cir. 1993) ("'Due process' is not a talismanic term which guarantees review in this court of procedural errors correctable by the administrative tribunal.") (internal quotation marks and citation omitted). Because Castillo failed to raise any procedural error before the IJ or BIA, we lack jurisdiction to adjudicate such a challenge.

Second, to the extent Castillo asserts a substantive due process claim, that argument also fails because it simply re-characterizes his challenge of the BIA's discretionary determination in constitutional terms. See Khan v. Att'y Gen., 448 F.3d 226, 236 (3d Cir. 2006). Castillo's basic allegations that the BIA abused its discretion by refusing to reopen his removal order *sua sponte* are insufficient to raise a colorable constitutional claim. See Sang Goo Park, 846 F.3d at 655 n.51. Accordingly, his "artful [constitutional] labeling will not confer us with jurisdiction." Jarbough v. Att'y Gen., 483 F.3d 184, 189 (3d Cir. 2007).

9

## IV.

For the foregoing reasons, Castillo's petition for review will be denied in part and dismissed in part.